FRANKLIN STEELE, Respondent, *vs.* ARNOLD W. TAYLOR, and others, Appellants.

A purchaser of property sold by virtue of an execution, *pendente lite* is a *voluntary* purchaser, and takes his title subject to the *lis pendens*, precisely as if by a voluntary conveyance of the property by the judgment creditor.

Such a title is not imposed upon him, by operation of law, as he acts for himself in making his bids for the property, and takes it *cum onere.*

A judgment lien attaches to only such estate in the property as the debtor has at the time when the judgment against him is perfected, or which he may subsequently acquire during the continuance of the judgment.

Steele *v.* Taylor and others.

Voluntary incumbrancers whose liens attach *pendente lite*, need not be made parties Defendant, and they cannot compel the complainant to insert in his Bill of Complaint, the conflicting rights and equities existing between them and the Defendant, for the purpose of obtaining a decree to determine their rights and equities.

But after a decree between the original parties, voluntary incumbrancers may have their equities and rights to the property determined, and may file their bill to protect the same.

But such incumbrancers may be made Defendants in a suit, by the express consent of the Complainant, or by some act on his part recognizing them as proper Defendants.

The opinion in this cause contains a sufficient statement of its history, to enable us to perceive the application of the points and authorities cited. It was an appeal from an order of the District Court of Ramsey County, in Chancery.

The following are the points and authorities relied upon by the Appellants' Counsel:

*First.* The said order appealed from was improperly granted, for the reason that all the grounds on which it was asked were untrue and insufficient.

*Second.* The evident object for which said order was asked, and the only effect it could have, was to carry out and consummate a collusion and conspiracy between said Steele and Taylor to deprive these Appellants of their equitable rights.

*Third.* The said orders of the 14th, 18th and 24th days of March, 1853, were taken by default and consent, and therefore were not properly vacated without the assent of both parties.

*Fourth.* The Respondent herein had notice not only of the application to the Court for the said orders, but also of the particular form of the application, and having suffered the said orders to be taken by default, could not afterwards properly object to them in mere matter of form, even though the form was irregular.

*Fifth.* The proper form for application for the said orders was a matter resting in the sound discretion of the Court; and that discretion having been once exercised, could not properly be reviewed.

*Sixth.* In matter of form the said application to the Court by petition was regular, precedented and in accordance with the well settled principles of equity practice.

*Seventh.* The said petitioners, the Appellants in this Court, had an interest in the real property or money which was the subject of litigation in this cause.

*Eighth.* That interest a Court of Chancery would be bound to recognise and protect whenever it should be brought by proper application within its judicial knowledge.

*Ninth.* The applications to the Court below were necessary, and in matter of substance, if not in matter of form, properly made ; and the said orders of Court were just and equitable to all the parties concerned, and were therefore properly made and ought not to have been vacated.

*Tenth.* If any order were admissible in the instance of the one appealed from, it should have been at most a modification of the former orders, and that without prejudice to the rights of the petitioners.

*Eleventh.* The order of Court appealed from to this Court is irregular, unprecedented, unjust and inequitable, and therefore ought to be reversed.

*Twelfth.* Justice under the law and rules of chancery proceedings, requires of this Court that the interests of these appellants in this cause shall be protected.

In support of which said points, the said Appellants will cite the following authorities, to wit :

3 *Paige,* 573; 4 *ibid.,* 476–8 ; 7 *ibid.,* 290 ; 3 *Johns.,* 543 ; 10 *ib.,* 521 ; 1 *Bar. Ch. Pr.,* 597 ; *ib.,* 595 *and* 596 ; 1 *Moulton's Ch. Pr.,* 32 ; 2 *ib.,* 77 ; 2 *Vesey,* 113 ; 13 *ib.,* 394 ; *Story's Eq. Pl.,* 342 ; *ib.,* 541 ; 1 *Story's Eq. Ju., Sec* 496 ; 2 *ib.,* 742 ; 16 *Serg. & Rawl.,* 237 ; 11 *Wend.,* 448 ; 4 *J. J. Marsh,* 395 ; *Daniel Ch. Pr.,* 1201 ; *Adams Eq.,* 312 ; *ib.,* 316 ; *ib.,* 713 ; *R. S. Min. Ter.*, *Chap.* 94, *Sec.* 76 ; 1 *Bar. Ch. Pr.,* 33, 578, 633 ; 3 *Paige,* 123, 166, 446, 476 ; 4 *ib.,* 289, 378 ; 7 *ib.,* 288, 364, 513.

The following are the points and authorities relied upon by Counsel for Respondent :

The record of the bond from Taylor to Steele gave to Steele a title, according to the terms of the bond, and was by express Statutory provision, notice to and took precedence of any subse--

Steele *v.* Taylor and others.

quent purchaser or purchasers and operated as a lien upon the lands described, in the instrument, according to its import and meaning.—*Sec.* 3, *R. S.*, 215.

The District Court has decided that Steele fulfilled sufficiently the terms of the bond, so far as he was concerned.

MS. opinion of Judge Fuller overruling motion to dissolve injunction in this case.

The assumption of the contracts, payment for the stove, and the payment of Bantin were to be done after Taylor had given the Deed.—*Ibid.*

To a bill for specific performance *the parties to the contract* are the only proper parties.—*Wood vs. White,* 4 *Mylue & Craig,* 460 ; *Taskee vs. Small,* ibid., 3 *Paige* 63 ; *Hall vs. Deva,* 3 *Young* & *Collyce, Eq., Exc.* 191 ; *White vs. Wood,* 4 *Mylne & Craig,* 460 ; *Dan. Ch. Pr.,* 247 ; —— *vs. Walford,* 4 *Russ.,* 372 ; *Melthorpe vs. Holegate,* 1 *Collyer,* 303 *and cases there cited.*

If a person *pendente lite* acquires a voluntary interest in the subject matter of the suit, he cannot, by petition, pray to be admitted to take a part as a party defendant.—*Dan. Ch. Pr.,* 328 ; *Story's Equity Pl., S.* 342 ; *Note Foster, vs. Deacon,* 6 *Madd. R.,* 59 ; 2 *Mitf. Eq. Pl., by Jeremy,* 68 ; *Sedgwick vs. Cleveland,* 7 *Paige,* 290 ; (*See reasoning of Ch. Walworth in this case,*) *Deas vs. Thorne,* 3 *John.,* 544 ; *Gaskill vs. Durdin,* 2 *Ball & Beatty,* 167 ; 2 *Johns. Ch.,* 455 ; *Murray vs. Lilburne, a Strong Case* ; *Hoxie vs. Caw,* 1 *Sumner,* 173 ; 1 *Smith Ch. Pr.,* 432 ; (*read this,*) *Mitford's Pls., note on parties,* 397, 398 *and ref* ; *Bishop of Minchester vs. Bean,* 3 *Ves.* 316 ; *Metcalf vs. Pulvertorf,* 2 *V. & B.,* 205–7 *and ref.*

Final orders ought not to be granted upon petition.—1 *Smith's Ch. Pr.,* 70.

A party in contempt cannot be heard upon petition.—1 *Smith's Ch. Pr.,* 72.

This Court has no jurisdiction of this appeal.—*R. S.,* 471, *Sec.* 74.

NORTH & SECOMB, Counsel for Appellants.

HOLLINSHEAD & BECKER, and H. J. HORN, Counsel for Respondent.

*By the Court*—CHATFIELD, J.   The bill in this case was filed by the complainant against the Defendant Arnold W. Taylor, to enforce the specific performance of the condition of a bond executed by Taylor to the complainant; such bond being conditioned (among other things) for the conveyance to complainant by Taylor, of certain real property therein described.

The Defendant Taylor answered the bill, contesting the complainants' equitable title to the property and his right to have such specific performance.

Pending these proceedings between the complainant and Taylor, certain other parties obtained judgment against Taylor and by virtue of executions issued thereon, caused parcels of the same real property claimed by the complainant under his bill, to be sold by the proper Sheriff.

After such sales by the Sheriff, the purchasers, or those claiming under them, made their petitions and thereon asked to be admitted and made parties Defendants in the suit between the complainant any Taylor, and for relief.   Notices of such applications were served on the solicitors for the complainant, but there was no appearance on the part of the complainant at the hearing of either of them.   The applications were granted.

Subsequently the complainant, upon affidavit and notice, moved to vacate the orders admitting the petitioners as parties Defendants, and upon that motion an order was made vacating the orders made upon the said petitions and dismissing the petitions.

From that order the appeal in this case was taken.

The main question to be determined upon this appeal rests upon the character of the position in which the Appellants, (the petitioners,) stand relative to the complainant and Taylor. It is this: are the Appellants to be deemed *voluntary* purchasers *pendente lite* of the several parcels of the lands in question, which they respectively claim in their petitions, or are they to be considered as persons receiving the title thereto *pendente lite* by operation of law?

If they are voluntary purchasers, they may or may not be made parties at the election of the complainant.   They cannot as such, be allowed to come in as parties against or without

his consent, and whether parties or not, they would be bound by the decree. If they have, under their purchases, any interests or equities requiring protection against the effect or consequences of a decree between the original parties, they must seek it, not by petition to be made parties in the pending suit without the consent of the complainant, but by an original bill in the nature of a supplemental and cross bill.—*Story's Eq. Pl., Sec.* 342 ; 7 *Paige Ch. Rep.*, 288.

If they are persons upon whom the title has been, by operation of law, cast *pendente lite*, they *must* be made parties, and the complaint cannot proceed until they shall have been brought in as such.

They claim title by execution. It is a kind of title unknown to the common law, and seems to be of American origin. It has grown out of the system of judgment liens adopted by many and probably by most of the American States, and out of the enforcement of the purposes of such liens, by process of execution. The lien of the judgment and process of execution, appear to have been substituted for the old common law Writ of Elegit.—4 *Kent's Com.* 423, 441, 497.

The lien is one that is forced and fixed upon the estate by operation of law, and is converted into an absolute title by virtue of the process of execution and the action of the proper officer. The title is thus transferred from the judgment debtor to the purchaser without regard to the will or desire of such debtor. So far it is a conveyance of the title by operation of law, for the proceedings and process of the law are made the instruments by which, and the conduits through which, the title is made to pass from the judgment debtor to the purchaser. The presumption is that the judgment debtor is thus *involuntarily* divested of his title.

But the purchaser takes voluntarily. His purchase is wholly an act of volition on his part, and he receives and holds in his own right and not in trust for the use of others, all the estate that he obtains by his purchase. He acts for himself wholly in making his bids and purchase and is influenced and governed by his judgment of what, under the circumstances, his own interests, and not those of others, require or render advisable. He cannot be deemed other than a *voluntary* purchaser, though

he receives his title by operation of law. The *lis pendens* is notice to him, and he takes the title *cum onere* precisely as he would by a *bona fide* voluntary conveyance from the judgment debtor, and his position with reference to both of the original parties to the suit, is the same as it would be under such voluntary conveyance. It seems to me that it would be inconsistent and incompatible with other well established principles, to allow him for the protection of his own private interests, the benefits of the rules applicable to the case of a trustee, upon whom the title had, by operation of law, been cast for the use of others; as in cases of assignees in bankruptcy or insolvency, and of receivers in chancery. He does not hold the position or rest under the responsibilities, nor is he subject to any of the duties of such trustee, who, as such, is always subject to the jurisdiction and amenable to the power of the Court of Chancery, and entitled to the benefit of its directory orders. Nor does he stand in a light like that of an heir at law, upon whom there is a descent cast by the death of the ancestor *pendente lite*. In such case the death extinguishes the party and abates the action rendering a bill of revivor indispensible.

The general doctrine applicable to forced or judgment liens is, in my view, such as to compel the conclusion above stated.

It has been held, and I think it is quite well settled that a forced lien, like that of a judgment, attaches to only such estate as is vested in the debtor at the time when the judgment against him is perfected, or at some subsequent time during the continuance of the judgment. The principle is that where there is no title or estate, there is nothing to which the lien of the judgment can attach—no tangible subject for the action of the lien. Hence a deed or mortgage made in good faith by a debtor is, though unregistered, good against the lien of a subsequent judgment against the debtor, whether the judgment creditor have notice thereof or not. The benefits of the recording act have not, in this Territory, been extended (as they have in some of the States,) to attaching and judgment creditors.

Admitting the regularity and validity of the judgments under which the appellants claim, the most that they could

derive therefrom or claim thereby, was a lien upon the estate of Taylor in the lands in question, subject to all pre-existing equities in favor of the complainant or other parties. 8 *John. R.* 385. Such lien was simply an incumbrance upon the estate of Taylor in the lands, as such estate existed at or subsequent to the time of the docketing of the judgment; and, if I mistake not, the rule is that incumbrancers who become such *pendente lite* need not be made parties. They stand in no better position or more favorable light, relative to the parties, than voluntary *bona fide* purchasers *pendente lite*, nor is it proper or reasonable that they should. They are in the same manner and to the same extent bound by the decree, and they have the same right to file their bill for the protection and enforcement of their equities under their liens.

The purchaser, under process of execution, the office of which is to convert the judgment lien or incumbrances upon lands into an absolute estate, and to foreclose the debtor's right to redeem by payment, obtains by his purchase, only the estate to which the lien was fixed by the judgment. *Cooper vs. Cory,* 8 *Johns. R.,* 385. It would be very inconsistent that he should take a greater or better estate than that held by the debtor. He takes it voluntarily and *cum onere.* He stands in relation to pre-existing equities and to those in whose favor they exist, in the same position which the judgment creditors held previous to the sale by the officer by virtue of the process; no better—no worse. It would seem to follow, that if a person becomes such purchaser *pendente lite,* he need not be made a party by the complainant, and cannot come in as such, without the consent of the complainant. While he would, in case he should remain quiet and silent, be bound by the decree, he may file his bill to protect and enforce his equities.

When the objects and purposes of the bill in this case are well and fully considered, the propriety and correctness of the conclusion before stated, are, to my mind, made much more clearly manifest. The purpose or design of the bill is to adjudicate and determine the rights and equities claimed by the complainant, in the lands as against the Defendant Taylor, and which he, by his answer, denies and resists. Facts sufficient to sustain the complainant's claims to equities as against Taylor,

would, at the same time, sustain them against the judgment creditors of Taylor and against the purchasers under the executions issued upon the judgments. It is no part of the design or proper office of the bill in this case to furnish the means of adjudicating or determining the rights of the Appellants against the original Defendant Taylor—though, perhaps it might, with the consent of the complainant, be made the instrument of such a purpose. If the complainant's claims to equities are not valid against Taylor, the Appellants have no need of the aid of a Court of Equity to protect their rights; for the law secures to them, in such case, the titles which they have acquired under the judgments and executions; provided the proceedings of the creditors and their officers have been legal and effectual. If such proceedings have not been effectually conducted, the Appellants have not thereby acquired any equities, and a Court of equity could not interpose to aid them. If the complainant's claims to equities be not valid, then the moneys paid by him into Court, belong to him and the Appellants have not a shadow of equitable claim to any part of that fund. If the complainant's claims to equities be valid against Taylor, they are equally so against the Appellants, and in such case they may have, if their judgments, executions and purchases be all legal and valid, an equitable right in the fund paid into Court by the complainant for the use of Taylor. Such right vests against Taylor and not against the complainants. The Appellants cannot, it seems to me, consistently seek to protect or enforce such right or equity by asking to be made Defendants with Taylor at the suit of the complainant. There could not, in such case, possibly be any ground of issue between them and the complainant upon their claim, to an equitable interest in the fund. Both the Complainant and Appellants assume that the money is Taylor's, and what matters it to the Complainant whether Taylor or his creditors get it. The issue in such case would be between Taylor and the Appellants, and it would be neither just or consistent for the Complainant, without his consent, to be embarrassed and delayed in the acquisition of his rights, by such a contest over the fund, between Taylor and his creditors. Indeed I cannot well see how a decree founded upon the complainant's bill could consistently

determine the conflicting rights between and distribute the fund among the Defendants ; conflicts in which the complainant has no concern, or right to interfere, and which are entirely foreign to the substance and prayer of his bill.

If all persons claiming title acquired by execution *pendente lite* may become parties without the consent of the complainant, or must be made parties by him to enable him to proceed, as is insisted by the counsel for the Appellants, the object sought to be obtained by the bill, however clear, palpable and unquestionable the right might be, might, and in many like cases would, be embarrassed and delayed till the intermediate damages and expenses would inflict upon the complainant an injury greater than ultimate success could possibly compensate. Cases might easily occur in which the Complainant would find it impossible to ever reach a final hearing and decree.    The original purchasers under the execution are first admitted or brought in as Defendants.    The next day one or more of them sells his interest or some part of it.    His grantee may be admitted or must be brought in as a Defendant, for he holds and represents a title by execution, and the principle for which the counsel for the Appellants contend, would include him. Such changes may be made daily, hourly, and without limit as to time.    But it may be said that such grantees, though holding a title against the property by execution, are strictly voluntary purchasers *pendente lite* and therefore need not be made parties —cannot be without the consent of the complainant.    Grant it, and only one branch of the embarrassing difficulty is removed. The title by execution in the hands of the original purchaser, is liable to attachment and judgment liens and to be sold under executions against him.    The same thing is liable to occur in reference to any and every grantee of such title to any parcel of or share in such lands, be the same never so small.    Forced or judgment liens upon, and titles by execution in the lands or in parcels or shares of the lands in controversy might thus multiply *ad infinitum* and keep the complainant during his life, and his heirs forever after him, busy in bringing in as Defendants, purchasers under executions, or in attending their own applications to be made such.    However strong the complainant's rights and equities might be, his remedy would be

crushed beneath the accumulated and accumulating weight of parties, and postponed forever. The *lis pendens* would never cease, but with each execution sale would become more complicated and cumbersome. Time would surely bring death to some among so many parties and create titles by descent or devise in the heirs or devises of those who should die seized of the title by execution to any, even the smallest aliquot part of the smallest usable parcel of the lands in controversy. Such heirs and devises must *ex necessitate* be brought in as Defendants, and that too, by bill of revivor. I repeat, the *lis pendens* might never cease and the most palpable and pressing equity might be defeated by a rule rendering the remedy impracticable. An exhibition of possibilities and extremes like this, is always extravagant, but it frequently serves well to illustrate the propriety or impropriety of a rule of proceeding.

That rule is best which affords a full protection and remedy to each party, with the least power or opportunity of abuse and consequent danger of injustice to the other. The rule here applied to those who acquire title to or interest in real estate by a judgment and execution against a Defendant, while the same is the subject matter of a suit in equity between such Defendant and a third party, is, in my view, of that character. It leaves it in the power of the complainant to protect himself against embarrassment and delay in the litigation of his rights against the Defendant, by the interposition of those who thus acquire rights or interests in the subject matter of the suit subsequent to the commencement of the same. At the same time it places in the hands of those holding such subsequently acquired equities, full and ample means of protecting and enforcing the same by giving them the benefit of an original bill in the nature of a supplemental and cross bill. If a person holding such equity will not take the responsibility of such a bill, and thus prosecute his right affirmatively, he cannot reasonably ask to be admitted Defendant in a pending suit between other parties, and complicate and embarrass the equities of such parties respectively, for the sake of experimenting upon his own, by way of defense to those of the complainant: nor can he, if he will not take the hazard of such a bill, reasonably complain at being bound by the decree in the suit pending at the time when he acquired his equities.

The conclusion that the Appellants had not the right to be admitted as Defendants without the consent of the complainant, requires us to determine whether the record discloses any or sufficient evidence of such consent on the part of the complainant, for if he has once consented by any word or act of which the Court has competent evidence, he must stand to it, and cannot be allowed subsequently to repent and retract.

The only competent evidence upon that subject is the Complainant's default or non-appearance at the hearing of the petitions of the appellants, to be admitted as Defendants, he having notice of the time and place of such hearing—such default may imply absence of objection on the part of Complainant, but that is all, and I do not think it is enough. The right of the appellants to be admitted as Defendants, rests wholly upon the consent of the Complainant. Such consent to bind him and sustain the right of the appellants to be admitted as Defendants, should be positive and be directly and affirmatively shown by the record. It is always an act of grace or favor, on the part of the Complainant in such a case, and the appellants in this case should have sought to obtain it from him as such. They could not force it from him by a mere notice, nor can the proof of it be derived by implication from either absence or silence. Either an express consent on the record in the cause, or at least some act in the cause on the part of the Complainant recognizing the appellants as proper parties Defendants is in my judgment necessary to bind him. None such appears in the case.

The orders admitting the appellants as Defendants in the cause were therefore improperly made, because made without the indispensible pre-requisite of the Complainants consent, and after the entry of those orders, the appellants were on the record as Defendants without the right so to be there.

I think it was competent for the Complainant to clear the record of those orders, thus improperly made, by motion, and that it was not necessary to require of him a petition for that purpose. He was not asking that those orders be vacated as a matter of grace or favor, but as a matter of right, because they were made irregularly—made without his consent, which alone could give the Court competent authority to make them.

The appellants being thus on the record without the right to be there, it was the right of the Complainant to have them put off, and his motion to that purpose, was, in my judgment, proper and properly granted. The order, (from which the .appeal in this case was taken,) vacating the orders admitting the appellants as Defendants, and dismissing their petitions, is in my opinion, correct. I think it was properly made and that it should be affirmed.

These views of the case as it appears upon this appeal, controlling, as they do, the result, render it unnecessary, if not improper, to consider either the subject matter or prayer of the petitions or the form or character of the orders thus vacated by the order from which the appeal in this case was taken. The appellants, not having acquired the right to come before the Court in the way and character in which they sought to come, cannot be deemed to have properly placed their equities and the facts upon which they rest in the possession and power of the Court for its consideration and action. Parties seeking the protection and aid of a Court through the exercise of its power and jurisdiction over the subject matter and over the persons of other parties, must conform to all the pre-requisites necessary to acquire the right and thus enable themselves to appear, as parties, before they can present their cases and ask for such protection and aid.

The proceedings in the case subsequent to the entry of the order from which this appeal was taken, are not before this Court on this appeal.