## The United States *v.* The Pacific Railroad and others.

(Circuit Court, E. D. Missouri. March 13, 1880.)

INCOME TAX—DEMAND—LIEN—TIME IT ATTACHES—PROPERTY IT AT-
TACHES.—The lien of the income tax (Act July 13, 1866, 14 St. at Large,
107; Rev. St. § 3186) relates back, upon demand, to the time when the
tax was due, but only attaches to the property belonging to the per-
son from whom the tax was due at the time when the demand for the
payment of the tax was made.

SAME—LIEN, How CREATED.—The assessment of such tax by the assessor,
in the mode prescribed by law, is essential to the creation of such lien.

In equity. Demurrer to bill.

McCRARY, J. This is a bill in equity, filed by the United
States, to enforce a lien upon property, formerly owned by the
Pacific Railroad, for taxes amounting in the aggregage, includ-
ing penalties, to something over $135,000. The tax claimed
as delinquent accrued during periods of time extending from
July 1, 1864, to February 28, 1871, and is the income tax, or
the tax upon the receipts and profits of said company during
those periods. When the tax accrued the Pacific Railroad
was the owner of the property against which the lien is sought
to be enforced, but since that time several large mortgages
have been executed upon the same, and under a foreclosure
of one of these the property was, on the sixth of September,
1876, sold to one James Baker, who, on the twenty-first day
of October, 1876, conveyed the same to the Missouri Pacific
Railroad Company, the present owner. The last-named com-
pany mortgaged the property November 1, 1876, to secure
bonds to the amount of $4,500,000. The present owner, as
well as the several lien holders, are made parties, and the
prayer of the bill is for decree declaring the taxes aforesaid to
be a lien on said property prior and paramount to any claim
on their part, and for a foreclosure and sale. It is conceded
that the tax was never assessed by any officer of the govern-
ment, but it is insisted that this was not necessary, because
there was an assessment by operation of law which was
equally effective. The bill avers that demands were made for

the payment of the taxes claimed on the second of November, 1877, and on the sixteenth of July, 1879; both dates being subsequent to the execution of the several mortgages aforesaid, and also to the purchase of the property by the present owner.

The defendants demur to the bill upon the ground that the same constitutes no cause of action, for the following, among other reasons:

"That even if the complainant has a lien it only took effect at the time the demand is averred to have beem made, and so is subject to the title of the mortgagees and purchaser represented by the defendants."

In considering the demurrer we are called upon to construe the statute under which the lien is claimed. This statute is found in the act of July 13, 1866, (14 Stat. 107,) and is also embodied in section 3186 of the Revised Statutes, and is as follows:

"And if any person, bank, association, company or corporation, liable to pay any tax, shall neglect or refuse to pay the same after demand, the amount shall be a lien in favor of the United States, from the time it was due until paid, with the interest, penalties and costs that may accrue in addition thereto, upon all property and rights to property belonging to such person, bank, association, company or corporation."

The question is as to the meaning of the words "upon all property and rights of property belonging to such person, bank, association, company or corporation." Does the language apply to the property belonging to the Pacific railroad when the taxes accrued, or only to that belonging to that company when the demand by which the lien was created was made?

It was said by Mr. Justice Miller, in *United States* v. *Pacific Railroad*, 4 Dillon, 71, that "in construing this section it is proper to consider the extraordinary nature of this lien. It is," he said, "not only a lien upon the land, but is a lien upon the personal property; it is not only a lien upon property in possession, but upon all rights to property depending upon contracts, and upon unexecuted contracts; it not only creates a present lien, but it relates back." He further observes

that the demand may be made long after the maturity of the tax, and will create a lien which relates back and establishes itself upon "the property or rights of property of the defendant." The question in that case was as to the sufficiency of the demand, and the precise point now under discussion did not arise; but I think I am within the spirit of that opinion when I say that the statute should not be construed as subjecting property which has been conveyed to innocent purchasers, prior to any demand, unless this is its plain meaning. The consequences of such a ruling would be so serious and far-reaching that I should not be willing to invoke them by any doubtful interpretation. There is no limitation as to the time within which the government may proceed against persons who failed to comply with the income and other internal tax laws. I have no doubt such persons are numerous. Many of them may be insolvent now, but may have owned property, when the taxes accrued, which has since passed through many hands. The law may well be liberally construed and rigidly enforced as against the guilty, especially where they have concealed their property or otherwise attempted to evade their just obligations to the government. But if, upon making demand now, at the end of 12 or 15 years from the time when the taxes were due, the government can establish a lien upon all the property then owned by the delinquent tax payers, it would result that in most cases not the guilty, but the innocent, would be made to suffer. Such a doctrine would also unsettle the titles to real estate, since it would be impossible to know or to ascertain whether the owner has not, during the existence of the income tax law, suppressed the truth as to his receipts and earnings, or made a false return thereof. In my opinion the language of the statute does not require the construction contended for by counsel for the government. If congress had intended to make the statute so far-reaching as to subject property in the hands of innocent purchasers, who became owners years before any step was taken by the government to assert its lien, this intention would have been plainly expressed. Such, however, is not the case. Let us examine the phraseology:

"If any person, * * liable to pay a tax, shall neglect or refuse to pay the same after demand, the amount shall be a lien in favor of the United States from the time it was due until paid, * * * upon all property, etc., *belonging* to such person," etc. The statute does not say "upon all property which may have belonged to such person when the tax accrued."

This or similar language would, I think, have been employed if congress had intended to give the statute this effect. It must be conceded that the words "all property * * * belonging to such person" must be construed as referring to some time to be ascertained by the context; and it may also be conceded that we might, without doing violence to the *language* of the law, refer them to the time when the tax became due, and make the clause read "all property, etc., belonging to such person, etc., at the time the tax became due." This, however, does violence to the spirit of the act for reasons already stated. Another reading is authorized by the language, and is in harmony with the spirit, and that is the one I have adopted, namely, that the words in question refer to the time when the demand is made, and may be phrased thus: "All property, etc., belonging to such person at the time such demand is made." By this construction the lien, when it once attaches, relates back to the time when the tax was due, but it does not attach to the property transferred to innocent purchasers prior to demand. This view also harmonizes with the general policy of the law relating to land titles, which is to protect the citizen against loss from secret liens, not disclosed by any public record nor ascertainable by due diligence. Nor is it unjust toward the government, for it is fair to presume that the government, armed as it is with so many agencies and appliances for ascertaining what taxes are due and unpaid, and from whom, and all-powerful as it is to enforce its rights, will, within reasonable time, make demand, or take some steps in the direction of making collections, in all cases where there is delinquency. The government may protect itself by diligence if the view I take of the statute shall prevail; but, if the opposite view is sus-

tained, the citizen who purchases real estate **is absolutely** without protection against possible liens for taxes of this character.

Another ground of demurrer is as follows: "Because it appears that no assessment return or list was ever made of said taxes, and so there can be no lien therefor."

The question whether an assessment by the assessor or other officer, authorized by law to make it, is a necessary step in the creation of a lien for taxes under the internal revenue laws, is, so far as I know, undecided. The laws provided for assessors, whose duties were very particularly prescribed. They were clothed with power to summon any person failing to deliver a list or return of taxes within the time required, or making a false return, as well as any other person, whether residing within or without the state, for the purpose of requiring testimony under oath respecting any objects liable to tax, and disobedience to such summons was made punishable as a contempt of court; and, in case any person or corporation failed to make a proper and true return, the assessor was required, from the best information he could obtain from an examination of witnesses, and on his own view and information, to himself make a list or return of all such person's taxes, including special and income taxes. The assessor was authorized to hear and determine appeals concerning taxes returned in the annual list, and after disposing of these he was to make out lists containing the sums, payable according to law, upon every subject of taxation for each collection district, which list was to contain the name of each person residing in said district liable to tax, and to furnish to the collectors of the several collection districts, respectively, copies of such lists. The collector was required to receipt for said lists, and thereupon to give public notice that the taxes therein specified had become due and payable, and to fix a time and place within the county at which he or his deputy was to attend and receive the same. Then follows the provision already quoted providing that if any person, bank, association, company, or corporation, liable to pay any tax, should neglect or refuse to pay the same after demand the amount should be a lien,

etc. I have given, without quoting at length, the substance of the provisions of the revenue laws applicable to the questions now under consideration, as they are found in the acts of June 30, 1864, (13 Stat. 223,) and of July 13, 1866, (14 Stat. 97.) The question is, whether the several steps in the preparation of the assessment lists and their return to the collector must precede the demand, which is the foundation of the lien. The supreme court has decided in two cases that the obligation to pay the tax does not depend on an assessment made by an officer, but that, the facts being established on which the tax rested, the law made the assessment, and an action of debt could be maintained to recover it. *The Dollar Savings Bank* v. *United States*, 19 Wall. 227; *King* v. *United States*, 99 U. S. 229.

The question in these cases was, however, simply as to the liability of the delinquent himself when sued in an action of debt for taxes due and unpaid, but never assessed by an officer. The present is a very different case; here the object is not to enforce a common law remedy in the collection of an admitted indebtedness, but to enforce a statutory lien against property which was once the property of the debtor, but is now in the possession and ownership of others. It is well settled that, in order to support and enforce a statutory lien for taxes, all the prerequisites of the laws granting the lien must be strictly complied with. *Thatcher* v. *Powell*, 6 Wheat. 119; *Parker* v. *Rule's Lessee*, 9 Cranch, 64; *Rouhendorf* v. *Taylor*, 4 Pet. 349; *Stead's Ex'r.* v. *Course*, 4 Cranch, 403; *Early* v. *Doe*, 16 How. 618; *Williams* v. *Peyton's Lessee*, 4 Wheat. 77; *Mayhew* v. *Davis*, 4 McLean, 213, 217; Hilliard on Taxation, 291; Cooley on Taxation, 258, 259; 2 Dillon on Mun. Corp. § 658.

The distinction between a suit to enforce a lien of this character, and an action at common law to recover judgment for unpaid and past due taxes, was clearly recognized and strongly stated by Mr. Justice Miller, in his opinion in the former case in this court, between the parties to this suit, already cited, (4 Dill. 71,) in which he said, in referring to a suit to enforce such a lien: "All this is a very different

thing from the collection of the taxes by the ordinary processes of distraint, or by a suit against the party for the amount of them. In an action of debt no such demand is necessary for the collection, as the supreme court of the United States has decided, because, when the dividends are declared, or the interest paid, the law annexes to it the obligation to pay 5 per cent. on that amount. But the law does not annex to that any lien on a man's property. The law does not annex to those taxes, as taxes *ex proprio vigore*, any lien."

In the same opinion he further said that, in view of the extraordinary character of this statute, and of the lien created thereby, "it is reasonable, and it is proper, that all the steps which the law requires of the party creating the lien in his own favor shall be pursued strictly."

Is, then, the assessment (in a case like the present, where no return was made) one of the steps required by the law in the establishment of a lien? I am clearly of the opinion that it is. The regular order established by the statute is:

1. The return or the assessment by which the amount of the tax is fixed. 13 Stat. 225, 230, §§ 12, 21, inclusive; 14 Stat. 101, 104.

2. The notice that the taxes are due, and informing tax payers of the time and place of payment. 13 Stat. 232, § 28; 14 Stat. 106.

3. The demand for the payment of the specific sum due from the individual tax payer who may have neglected or refused to pay the same. 14 Stat. 107.

I do not feel at liberty to hold that any one of these steps is non-essential. A demand implies the previous ascertainment of the sum due, and this ascertainment is by means of the return or assessment.

The lien is not created by the law itself, without any action by officers under the law, though a debt may be thus created. The liability of the tax payer is one thing; the creation and enforcement of a lien, especially against innocent parties, is another and very different thing. What I have said is of

course conclusive of the case, and the other questions discussed by counsel need not be considered.

The demurrer is sustained.

TREAT, J., concurs.