**UNITED STATES v. TAFT et al.**

No. 1666.

District Court, S. D. California, Central Division.

April 4, 1942.

William Fleet Palmer, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., all of Los Angeles, Cal., Bureau of Internal Revenue, for plaintiff.

Carleton W. Holbrook, of Los Angeles, Cal., for defendant B. Y. Taft and another.

Paul J. Otto and H. Elliott Pownall, Jr., both of Los Angeles, Cal., for defendant Citizens Nat. Trust & Savings Bank of Los Angeles.

HARRISON, District Judge.

This action involves the determination of the priority between a tax lien created under the provisions of Sections 3670 and 3671 of the Revenue Code, 26 U.S.C.A. Int. Rev.Code, §§ 3670, 3671, and a lien created by the levy of an execution by the Citizens National Trust & Savings Bank of Los Angeles. The sole question involved is whether or not the lien created by said sections attaches to after-acquired property. The case was submitted on a written stipulation of facts.

The facts, in so far as they are pertinent to this case, disclose that during the year 1931, the Government perfected its lien in the sum of $6,471.07, and interest upon all property and rights to property belonging to the defendant B. Y. Taft.

Paragraph IX of the complaint alleges that:

"On November 7, 1932, defendant B. Y. Taft and the plaintiff entered into an agreement in writing, which was on said day signed by B. Y. Taft and said Commissioner, whereby it was agreed that the amounts of $1,057.02, $4,853.40 and $572.17, representing said assessments of income taxes for the years 1926, 1927 and 1928, may be collected from said B. Y. Taft by distraint or by a proceeding in court begun at any time."

The stipulation of facts admits this allegation. The court raised the question relative to the sufficiency of this allegation as a sufficient pleading alleging the waiver of the statute of limitations. The defendant, Citizens National Trust & Savings Bank of Los Angeles, in its supplemental brief stated:

"Further, the defendant bank is not raising any question as to the effect of the waiver executed by the defendant B. Y. Taft, it being conceded that a waiver was signed by said Taft on November 7, 1932. The particular point upon which defendant bank relies in the instant action is that the lien of the Government did not attach to the property of the judgment debtor, which is here in controversy, and that the only basis upon which the Government is entitled to claim is upon the basis of the distraint proceedings, which it is stipu-lated were not run until September, 1940, approximately two years subsequent to the date on which the claim of the defendant bank attaches to the property."

The court has accepted statement of counsel and the issue of the statute of limitations is thereby waived as an issue in this case.

On March 13, 1938, Mary Eleanor Taft died and under the terms of her last will and testament, the defendant B. Y. Taft, was bequeathed an undivided 1/14th interest therein. The said estate is being probated in the County of Los Angeles and the estate is located in said County.

On April 9, 1938, the Citizens National Trust & Savings Bank of Los Angeles, levied a writ of execution on all the right, title and interest of said B. Y. Taft in the estate of said deceased on a judgment procured on March 9, 1938, for the sum of $17,829 and interest. Thereafter, on September 20, 1940, the Collector levied a warrant of distraint upon said property.

Said Sections 3670 and 3671 read as follows:

"§ 3670. Property subject to lien.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 53 Stat. 448."

"§ 3671. Period of lien

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. 53 Stat. 449."

Since the original adoption of Section 3186, Revised Statutes of the United States, only two reported court cases are found attempting to pass upon the question herein involved.

The first case is United States v. Pacific Railroad et al., C.C., reported in 1 F. 97, 99. The court in this case was considering the point as to whether or not the lien attached to property which had been conveyed to innocent purchasers prior to any demand and was not considering after-

acquired property. The court therein stated:

" * * * Let us examine the phraseology: 'If any person, * * * liable to pay a tax, shall neglect or refuse to pay the same after demand, the amount shall be a lien in favor of the United States from the time it was due until paid, * * * upon all property, etc., belonging to such person,' etc. The statute does not say 'upon all property which may have belonged to such person when the tax accrued.'

"This or similar language would, I think, have been employed if congress had intended to give the statute this effect. It must be conceded that the words 'all property * * * belonging to such person' must be construed as referring to some time to be ascertained by the context; and it may also be conceded that we might, without doing violence to the language of the law, refer them to the time when the tax became due, and make the clause read 'all property, etc., belonging to such person, etc., at the time the tax became due.' This, however, does violence to the spirit of the act for reasons already stated. Another reading is authorized by the language, and is in harmony with the spirit, and that is the one I have adopted, namely, that the words in question refer to the time when the demand is made, and may be phrased thus: 'All property, etc., belonging to such person at the time such demand is made.' By this construction the lien, when it once attaches, relates back to the time when the tax was due, but it does not attach to the property transferred to innocent purchasers prior to demand. This view also harmonizes with the general policy of the law relating to land titles, which is to protect the citizen against loss from secret liens, not disclosed by any public record nor ascertainable by due diligence. Nor is it unjust toward the government, for it is fair to presume that the government, armed as it is with so many agencies and appliances for ascertaining what taxes are due and unpaid, and from whom, and all-powerful as it is to enforce its rights, will, within reasonable time, make demand, or take some steps in the direction of making collections, in all cases where there is delinquency. The government may protect itself by diligence if the view I take of the statute shall prevail; but, if the opposite view is sustained, the citizen who purchases real estate is absolutely without protection against possible liens for taxes of this character."

It will be noted that the court there was construing the lien statute as originally enacted and before any amendment thereto had been made. I am of the opinion that this decision is not entitled to great weight for the reason that in so far as the same applies to after-acquired property, it is mere dictum and for the further reason that the statute under consideration has been amended in a material respect.

The law as originally enacted provided "the amount shall be a lien in favor of the United States from the time it was due until paid", Act July 13, 1866, 14 Stat. 98, while under the present state of the law, it is specifically provided that the lien "shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time".

After the lapse of sixty years, in the case of United States v. Long Island Drug Co., Inc., et al., 2 Cir., 115 F.2d 983, 986 involving the question of whether the drug company had in its possession any personal property belonging to the debtor taxpayer, the court stated:

" * * * Rights which do not exist at the time of the demand upon the taxpayer are not subjected to any lien. United States v. Pacific R. R., C.C.Mo., 1 F. 97. Here there was no showing that the taxpayer had any claim against the Drug Company when the demand upon him for payment was made."

And the court further stated:

"In the absence of a statute to the contrary, it is the usual rule that a garnishment does not affect future earnings or salary. Savings Bank of Danbury v. Loewe, 242 U.S. 357, 37 S.Ct. 172, 61 L. Ed. 360. Moreover, there would seem to be no justice in depriving the garnishee of its right to set off which, so far as the record shows was acquired for a valuable consideration before the demand was made on the Drug Company by the Collector. Both on April 15, 1936, when payment was first demanded of the Drug Company, and on March 7, 1939, when the last demand was made, the latter owed no debt to Steinberg upon which distraint could be made. We find nothing in § 3690 or § 3710 [26 U.S.C.A. Int.Rev.Code, §§ 3690, 3710], which varies the general rule that a garnishee process is not to be extended to future earnings, but will only reach an indebtedness which has accrued.

"It appears from the foregoing that there was no lien upon any earnings of Steinberg on April 15, 1936, or accruing thereafter, and that he had no accrued earnings upon the dates upon which a levy was attempted. Accordingly the Long Island Drug Company, Inc., had no property which it could be required to surrender by reason of the provision of 26 U.S.C.A. Int.Rev. Code, § 3710."

From the foregoing it will be observed that the real issue before the court did not involve after-acquired property. The court having determined the drug company had no property in its possession at the time of the levy, naturally, the Government's case fell. This case must be considered as an approval of the case of United States v. Pacific R. R., supra, but the opinion discloses that the court failed to consider that the reason on which this decision is predicated ceased to exist when Section 3186 of the Rev.Stat. was amended so as to require the recording of notice to render the lien valid as against innocent purchasers.

To the contrary, the Board of Tax Appeals in the case of A. H. Graves et al. v. Commissioner, 12 B. T. A. 124, in discussing Section 3186 of the Revised Statutes in part said:

"We do not consider it necessary unduly to enlarge this opinion by an extended consideration of questions relative to the time the lien arises; the time it attaches; or to what property it attaches, except to state that the lien arises only if there has been an assessment plus notice and demand. It relates back from the time of notice and demand to the time when the assessment list was received by the collector, and it attaches upon such property as the taxpayer has at the time the lien arises, that is, at the time of notice and demand, United States v. Pacific R. R., C.C., 1 F. 97, *and, of course, to all the property that the tax debtor subsequently acquires.*" (Italics supplied.)

It will be noted from the above quotation that the case of United States v. Pacific R. R., supra, is approved in so far as it held that the lien attaches to the property of the taxpayer held at the time the lien arises but specifically repudiates by way of dictum said decision, in so far as it applies to after-acquired property.

One published General Counsel Memorandum is found in C. B. VII-2, page 94, involving the interpretation of Section 613

(c) of the Revenue Act of 1928, 26 U.S.C. A. Int.Rev.Acts, page 461. In this memorandum the following language is used:

"Assuming the fact of the foreclosed prior mortgage and all other facts to be as stated, it is the opinion of this office that the above-quoted section of the law does not mean that the Government's lien against the property of a taxpayer should be released before the six-year period governing collection has expired, for the reason that *it is altogether probable that a delinquent taxpayer may at any time prior to the expiration of the statutory period of limitation become possessed of property against which the lien may attach, thus making the tax liability enforceable through the lien.* \* \* \*" (Italics supplied.)

It will thus be seen that the Board of Tax Appeals and the Departmental interpretation are in conflict with the two cases above cited.

In the case of Minnesota Mutual Life Insurance Co. et al. v. United States, D.C.N.D.Tex., 47 F.2d 942, 944, I find the following language used:

"The decree will not extinguish the lien *against anything else that the debtor may acquire,* nor does it extinguish the debt. It merely removes the cloud from the particular real estate described in this suit because the value thereof is very much less than the prior lien owned by the plaintiffs, and there is and would be no equity for the junior lienholder, to wit, the United States." (Italics supplied.)

It has been held that the Federal Tax lien has the effect of a judgment (Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421) and it would appear that a federal tax lien is somewhat analogous to a judgment lien, and it might not be going too far astray to examine some of the authorities that deal with this subject, in so far as the same applies to after-acquired property. It is true that most of the states specifically provide by statute that the judgment lien shall apply to after-acquired property, consequently, only cases that construe statutes that do not specifically so provide should be considered.

Generally speaking, a majority of the courts hold that a judgment is a lien on after-acquired property (15 R.C.L. 802), but a contrary rule has been adopted in some jurisdictions. 34 C.J. p. 590.

568

Pennsylvania appears to be the first state to hold that a judgment does not affect after-acquired property. Colhoun v. Snider, 6 Bin., Pa., 135. In a later decision in Water's Appeal, 35 Pa. 523, 78 Am. Dec. 354, the court stated:

"Notwithstanding the dissatisfaction that has been expressed with the doctrine of Colhoun v. Snider [supra], by several judges, it has been followed in a multitude of cases, and it is too firmly rooted in our law to be shaken at this day."

It will thus be noted that the Pennsylvania courts clung to their former holdings under the rule of stare decisis.

The Ohio courts followed the Pennsylvania holdings. Roads v. Symmes, 1 Ohio 281, 13 Am.Dec. 621. But the courts of Ohio were not any too happy in this holding as reflected in Stiles ex dem. Miller & McDonald v. Murphy, 4 Ohio page 92. The court stated at page 98 of 4 Ohio:

" * * * When a rule of construction has been adopted, upon which titles to real estate depend, it would lead to great inconvenience, if not injustice, to alter it. That decision may have been an innovation upon established principles of law— it may have been a departure from true policy, under the circumstances in which we are placed—but it would be a more dangerous innovation, and a wider departure from true policy now to disturb it. 2 Cran. 22; [Moore's Lessee v. Vance], 1 Ohio 1."

But a majority of the state courts have refused to follow the rule as reflected by the decisions in Pennsylvania and Ohio. See Steele v. Taylor, 1 Minn. 274, 1 Gil. 210-215; Elisha S. Babcock v. John Jones, 15 Kan. 296; Lewis Ralston v. John D. Field, 32 Ga. 453; Trustees of Real Estate Bank v. Watson & Hubbard, 13 Ark. 74–85; Atlas Portland Cement Co. et al. v. Fox, 49 App.D.C. 292, 265 F. 444-446, 266 F. 1021; Freeman on Judgments, 5th Ed., § 955, page 2007.

Coad v. Cowhick et al., 9 Wyo. 316, 63 P. 584, 585, 87 Am.St.Rep. 953, is an exceptionally well reasoned case wherein the court said:

"At common law, except for debts due the king, the lands of the debtor were not liable to the satisfaction of a judgment against him, and consequently no lien thereon was acquired by a judgment. But by St.Westm. II.(13 Edw. I.), c. 18, the judgment creditor was given his election to sue out a writ of fi. fa. against the goods and chattels of the defendant, or else a writ commanding the sheriff to deliver to him all the chattels of the defendant, except oxen and beasts of the plow, and a moiety of his lands, until the debt should be levied by a reasonable price and extent. When the creditor chose the latter alternative, his election was entered on the roll, and hence the writ was denominated an 'elegit'. Hutcheson v. Grubbs, 80 Va. [251], 254. While this statute did not in direct terms create the lien, courts so construed it as to infer a lien from the power to take the lands in execution. Scriba v. Deane, Fed.Cas.No.12,559, 1 Brock [166], 170. And this lien has been held by the English courts and by the almost unanimous opinion of the courts of this country to extend to the after-acquired lands of the debtor. Most of the states have enacted statutes declaring the lien, and, almost without exception, and without regard to whether such statute in terms extended the lien to after-acquired lands, they have held that such lands were bound by the judgment from the time of their acquisition by the debtor. Freem. Judgm. 367. So far as I can find, the only two exceptions are Pennsylvania and Ohio. There was also a similar holding in Iowa. Harrington v. Sharp, 1 G.Greene 131 [48 Am.Dec. 365]. But the rule laid down in that case was subsequently changed by an amendment to the statute expressly providing that judgments should be a lien upon after-acquired lands, thus bringing it into line with the mass of opinion in this country. Ware v. Delahaye, 95 Iowa [667], 682, 64 N.W. 640. The Mississippi court is also cited as adopting the same construction. But an examination of the cases shows that that court simply rejected the contention that lands subsequently acquired were bound from the date of the judgment, and held that 'the lien attached on after-acquired property from the time it was acquired by the debtor.' Moody v. [Doe ex dem.] Harper, 25 Miss. [484], 492; Cayce v. Stovall, 50 Miss. [396], 402."

Nebraska courts in Filley and Hopkins v. Duncan, 1 Neb. 134, 93 Am.Dec. 337, first followed the Pennsylvania rule but later in Colt v. Du Bois, 7 Neb. 391, the court at page 396 stated:

"It is undoubtedly true, that where a rule of construction, upon which titles to real estate depend, has been adopted, it

may lead to great inconveniences, if not injustice, to change it. But as the question presented by this case has never before been submitted to this court, we deem it best to disregard the dictum in the case of Filley [and Hopkins] v. Duncan, and lay down what we deem to be the correct rule, subjecting land acquired subsequently to the rendition of a judgment to its payment. The judgment of the district court is affirmed."

From the foregoing it must be conceded that the great weight of authority is in favor of the view, that judgments are liens upon after-acquired property, notwithstanding the statutes do not specifically so provide. Many of the statutes considered in such cases are less specific than Sections 3670 and 3671 of the Revenue Code.

█ I am of the opinion that the majority rule should be applied in construing said Section 3670 and so applying it, I have concluded that the lien so created applies to after-acquired property.

█ █ I am of the further opinion that said Sections 3670 and 3671 create a lien on after-acquired property for the following additional reasons:

1. The departmental interpretation of these sections is entitled to great weight and should not be disregarded without the most cogent and persuasive reasons. Baltzell v. Mitchell, 1 Cir., 3 F.2d 428 and cases therein cited; Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297.

2. Section 3670 subjects "all property and rights to property" to the lien. Section 3671 provides when the lien arises and "shall continue until the liability for such an amount is satisfied or becomes unenforceable by reason of lapse of time". Under the reasoning of defendant Citizens National Trust & Savings Bank of Los Angeles, if the debtor taxpayer owned no property at the time of the creation of the lien, it would cease to exist and said section 3671 would be meaningless and the provision for the continuance of the lien would be surplusage. To so hold would in effect nullify said section 3671, and violate well recognized rules on statutory construction. Armstrong Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

I therefore hold that such a tax lien does not depend upon the existence of property belonging to the judgment debtor for its sustenance and continued life. The lien created by said section 3670 continues as provided in section 3671 and attaches to after-acquired property.

I find added support to my conclusions in the construction of section 3679 of the Revenue Code which provides for a means of clearing title to realty affected by liens created under said section 3670. In Oden v. United States, D.C., 33 F.2d 553; United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705; Minnesota Mutual Life Insurance Co. et al. v. United States, D.C., 47 F.2d 942, and Sherwood v. United States, D.C., 5 F.2d 991, it has been held that a decree freeing certain property from the lien does not extinguish the lien. If such is true, what is the purpose of the continuance of the lien unless it is continued in existence for the purpose of affixing itself to after-acquired property?

The lien herein involved stands of record and in no manner whatsoever affects the rights of innocent third parties. It is inconceivable that Congress in any manner, under said sections 3670 and 3671, intended to weaken the Government by staying the hand of the Collector so that he could not reach after-acquired property.

Judgment for plaintiff. Counsel for plaintiff is directed to submit expeditiously proposed findings and decree in accordance with this opinion.