## Filley and Hopkins v. Duncan.

1. POSSESSION EVIDENCE OF TITLE. A party in possession and cultivating a tract of land, will be presumed to have some interest therein; especially if he afterwards acquire the legal title.

2. SPECIFIC PERFORMANCE. He will, after acquiring the title, be compelled to specifically perform a contract to convey, made prior thereto.

3. LIEN OF JUDGMENT: After acquired lands. Until levy of execution, the lien of a judgment does not attach to lands, acquired after its rendition, so as to affect bona fide purchasers.

4. ——: As against equities. Equity will control judgments, so as to protect equities of third parties existing at its recovery.

5. ——: As against vendee. A judgment against a vendor of lands, recovered after his agreement to convey, is not a lien against a vendee in possession, beyond the unpaid purchase money.

6. ——: Constructive notice. The entry of the judgment will not of itself compel the vendee in possession, under contract, to make subsequent payments to the creditor.

7. ——: Actual notice, of the mere fact of the entry of the judgment, will not compel him to do so.—CROUNSE, J.

8. CREDITORS' BILL. The judgment creditor may reach the unpaid purchase money by creditors' bill.

9. POSSESSION IS NOTICE. A vendor of lands by contract, retains the fee, and may convey a good title to a bona fide purchaser without notice; but such notice may be as effectually communicated, by the open and notorious possession of the vendee, as by information personally communicated to the purchaser.

On the 20th of July 1859, Francis Bell was in possession of the south-west quarter of section thirty in township eight north, range fourteen east of the sixth principal meridian, situated in Otoe county, holding the legal title to an undivided half thereof, and, in some way not explained, being entitled to have the legal title to the other undivided half, from certain heirs in whom the same vested. On that

FILLEY AND HOPKINS *v.* DUNCAN.

day he entered into a contract with Mrs. America Duncan, for the sale to her of the entire tract; and gave her a bond to convey the same to her, as soon as he should be able to make the deed. By the terms of the agreement, he was to take towards the purchase money, certain personal property, and was to be paid the balance of the agreed price, which was eighteen hundred dollars, whenever he should execute the conveyance. Mrs. Duncan entered at once under this contract, and that season gathered the crop, which, at the time of the sale, Bell was raising. The succeeding year she rented the premises to some person who lived upon and cultivated them. In October Mrs. Duncan paid all of the purchase money but $512.

On the 28th of May, 1860, Bell, having possessed himself of the legal title to the whole tract, made his deed therefor to Mrs. Duncan, and received the balance of the purchase money.

On the 20th of October, 1860, Mrs. Duncan died, leaving a husband and three children, who are the plaintiffs in this suit.

From his wife's death until 1863, Mr. Duncan continued in the occupancy of the premises, either personally or by tenants. At that time, he left the territory, entrusting the premises to the care of a friend. Shortly after he left, the defendants, Hopkins and Filley, entered into, and thence to the bringing of this suit occupied the premises.

At the December term, 1859, in the District Court for Otoe county, Hills recovered a judgment against Bell, which soon afterwards, he assigned to Filley. Execution issued thereon on the 21st of August, 1861, which was levied upon the south half of the premises above described. Filley was the purchaser at the sale; and after confirmation, he had a sheriff's deed of the premises, which bears date on the 20th of March, 1862.

At the same term of the court, Hopkins also recovered

a judgment against Bell, and sued out execution thereon, on the 2d of October, 1860, which was levied on the north half of the premises. At the sale, he was the purchaser, and after confirmation, he had a sheriff's deed, which bears date April 4th, 1862.

It appears that both Hills and Hopkins had, at the time they recovered their judgments, actual notice of Mrs. Duncan's purchase, and that Filley, who did not live in Nebraska, had an agent, who made the purchase for him of the judgment from Hills, and who also knew of Mrs. Duncan's interest. It does not appear that she knew of the judgments, until after she had paid the whole of the purchase money, and received the conveyance.

The action was brought in equity, to have the sheriff's deeds declared void, and the possession of the premises decreed to the plaintiffs. The cause was heard upon pleadings and proofs in the District Court, by Mr. Chief Justice MASON, who rendered a decree according to the prayer of the petition. The defendants appealed to this court.

*Mr. Shambaugh,* for the appellant.

*Mr. Croxton,* contra.

CROUNSE, J.

At the time of making the contract of sale of the lands in question with Mrs. Duncan, Bell, it is conceded, was the owner of the undivided one half thereof. He was in possession of the premises, and agreed to convey the entire fee when he should receive deeds from certain heirs. What his interest was to this remaining one half does not appear. The circumstance that he was in possession — cultivating the premises being of itself *prima facie* evidence of title — and the further fact that he did receive quit-claim deeds

from the heirs, make it quite certain that he had some right to this remaining one half. The conveyances received by him were simple releases, and of themselves do not indicate the interest conveyed by them. If there was an entire want of interest in Bell to this part, it devolved upon those who claim an advantage by reason of it, to show the fact affirmatively. It is safe to presume, that Bell had such an interest. as he could sell or assign, and which a court of equity. would recognize and protect in the hands of his vendee or assignee. "It is extremely clear," says Story, 2 *Eq. Jur.* 1050, "that an equitable interest, under a contract of purchase of real estate, may be the subject of sale. A purchaser claiming under such original contract, in case he afterwards sells his purchase to sub-purchasers, becomes in equity, a trustee for the persons to whom he contracts to sell."

Where there is a contract to convey an estate, which the vendor has not at the time, if he afterwards become the owner, a court of equity will compel a specific performance.—*Edwards* v. *Varrick*, 5 *Denio*, 664 ; *per* Porter, *Senator*, 695. So, when Bell completed his title by securing the deeds from the heirs, it was in fact for the benefit of Mrs. Duncan, and the transaction is so related to the contract with her, that in my opinion, her rights to this after-acquired title are the same as to that about which there is no dispute. However this may be, the lands in question were not levied upon, under these judgments until Bell had conveyed by deed to Mrs. Duncan ; and as to after acquired lands, no lien attaches so as to effect *bona fide* purchasers, until levied upon.—*Code*, 477 ; *Roads* v. *Symmes*, 1 *Ohio*, 281, 313. For the purposes of this case, therefore, it may be assumed that, at the time of making his contract with Mrs. Duncan, Bell was the absolute owner of the land bargained to her.

The position of Mrs. Duncan in July, 1859, when she

had made her contract with Bell, was this: She was the purchaser from the owner in fee of the land in question; she was in possession of, and cultivating the same, and on making payment, according to the terms of her contract, was to receive a good and sufficient deed. The transaction was a lawful and a usual one, and entered into in good faith.

The judgments under which Hopkins and Filley, the appellants, claim, were entered in December following, and before the execution of the deed from Bell to Mrs. Duncan, which was on the 28th day of May, 1860.

The lands and tenements of the debtor are bound for the satisfaction of a judgment against him, from the first day of the term at which it is rendered.—*Code*, 477. But it is well settled, that in equity, the lien of a judgment is subject to all equities that existed at the time it was recovered.—*Mayer* v. *Hinman*, 3 *Kernan*, 180, 190; *in the matter of Howe*, 1 *Paige*, 125; *Ellis* v. *Tousley*, *id*. 280; *White* v. *Carpenter*, 2 *id*. 217; *Keirsted* v. *Avery*, 4 *id*. 9; *Parks* v. *Jackson*, 11 *Wend*. 442. It is true, an agreement for the sale of lands is a personal contract; it does not attach to the lands sold, nor divest the vendor of his estate. The legal title still remains in him, and he can convey to a *bona fide* purchaser, without notice, a title to the premises, freed from the equity of the vendee. But while this is so, a purchaser with notice, would take the premises, subject to the equitable rights of a vendee. This notice may be actual personal notice, or it may arise from open, notorious possession of the lands, by the vendee, which is constructive notice to all the world.—*Gouverneur* v. *Lynch*, 2 *Paige, Ch.*, 300; *Chesterman* v. *Gardner*, 5 *Johns, Ch.*, 29. The lien of these judgments went no farther. They attached to the interest of the vendor, Bell, as they found it. Had the vendee abandoned the contract, the entire fee in the vendor would have become subject to the lien of the judgments; and the purchaser at sheriff's sale

under them, would have received a clear title to the lands so sold. With the contract subsisting, the lien extended only to the unpaid balance of the purchase money. To the extent of the five hundred and twelve dollars remaining unpaid upon Mrs. Duncan's contract, these judgments were a lien, which could have been made available to these judgment creditors, in a proper proceeding.

Subsequent to the entry of these judgments and before sale of the premises under them, Mrs. Duncan paid this balance of the purchase money to Bell and took a deed from him. No actual notice to her of the entry of these judgments nor claim upon her for the balance of the purchase money is shown. But it is claimed that the record of these judgments was constructive notice to her, and that any payment by her to Bell after this entry, was in her own wrong, and not to the prejudice of these judgment creditors. In support to this position, counsel refer to *Gouverneur* v. *Lynch*, 2 *Paige*, 300. All that is there said by the chancellor on this point is : "If a vendee is in possession of land, under a contract to purchase, a subsequent purchaser or mortgagee has constructive notice of his equitable rights, and takes the land subject to his prior equity. If the purchase money has been paid before notice of or prior to the recording of a subsequent mortgage, the mortgagee will have no claim upon the land. Where a part remains unpaid, he will have an equitable lien thereon to the extent of the unpaid purchase money." This case and the others cited by counsel under this head, while they assert the principle assumed in this case that these liens, in equity extend no farther than to the unpaid purchase money, do not declare the doctrine contended for here. In my examination, I have met with but one case supporting the view taken by the counsel for the appellants.—*Mayer* v. *Hinman*, 17 *Barb.*, 137. In 1835, one Schroeppel, being the owner of certain lands, contracted to sell them to Mayer. In 1838,

a judgment was recovered against Schroeppel which became a lien upon the premises and upon which they were sold in 1844. In January, 1846, a sheriff's deed was given to Hinman as assignee of the sheriff's certificate. Payments were made to Schroeppel by Mayer, after the recovery of the judgment, and before the sheriff's sale. After the sale and before the deed was given, viz. in October, 1845, Mayer made a further payment to Schroeppel. It was held that the judgment against the vendor was a charge upon the land binding the legal title — the lien being restricted in equity to the amount of the unpaid purchase money. It was further held that no notice to Mayer of the judgment, or sheriff's sale, was necessary to protect the legal title and claim of Hinman : and that Mayer had no right to make payments to Schroeppel in October, 1845, and was not entitled to have the same credited upon his contract, as against the title and claim of Hinman under the judgment. The judge delivering the opinion of the court says, as to the vendee, "his real equity consists in having parted with his money upon the faith of his contract and before an adverse legal title had accrued, or legal lien attached ; and not in having parted with his money subsequently, without making an effort to discover the then state of the legal title, and the rights of parties."

This case was taken to the Court of Appeals (vide 13 N. Y., 3 Kernan, 180), and there reversed, as to so much as holds that the record of a judgment is sufficient to insure the payment of the balance of the purchase money from vendee to judgment creditors. Judge DENIO delivering the opinion of the court, after assuming the law as fully established, that one in possession under contract of purchase is to be protected in equity as to his rights which existed at the time of docketing a judgment, says : "I consider it equally well settled, that the docketing of a judgment against the vendor affords no notice of its existence,

either actual or constructive, to the prior vendee of the judgment debtor. Parties who deal with the debtor respecting his lands, subsequently to the docketing of the judgment, are affected with notice. Such persons may make themselves perfectly safe in that particular, by searching the docket book of judgments in the proper office; and they will of course abstain from purchasing, if they find the land which they are proposing to buy, encumbered by a judgment. So, it may be said, a party holding a contract upon which payments remain to be made, may, before making such payments, examine for judgments against the vendor; but it would be an intolerable inconvenience to require this, where the payments, as is usually the case, are to be made annually or oftener; and should such examinations be ever so strict, the vendee would have to run the risk of an incumbrance intervening, while he was going from the office where the search was made to the residence of the vendor, to make the payment. It has been repeatedly decided that the docketing of a judgment, or the recording of a mortgage, is no notice to a prior purchaser or mortgagee of the premises, whose conveyance is on record, or of which notice was had; the object of the recording acts, and of the law requiring judgments to be docketed, being, it is said, to protect subsequent purchasers and incumbrancers against previous deeds, mortgages &c., which are not recorded, and of which they had no notice, and to deprive the holder of the prior unregistered conveyance or mortgage, of the right which his priority would have given him at common law.—*Cheeseborough* v. *Millard*, 1 *Johns Ch.* 409; *Stuyvesant* v. *Hall*, 2 *Barb. Ch* .151.

"The plaintiff (Mayer), in this case being in possession under his contract, that circumstance was notice to all persons who might subsequently become interested in any way in the premises, not only of such possession, but of the terms of the contract and of all his existing rights under it.

"In the view of a court of equity, his condition was like that of a party having a prior conveyance or lien which was duly recorded. * * The vendee having no notice of the judgment creditor's lien, and the creditor having full notice of the vendee's situation, it would seem to be reasonable, that in order to intercept those payments and divert them from the vendor's hands to his own, the creditors ought at least to inform the vendee of the existence of his lien, and his right to the unpaid purchase money."

The case of *Parks* v. *Jackson*, (11 *Wend.* 442,) cited with approval in the last mentioned opinion, is a strong authority in point. Parks, the plaintiff in error, was in possession of a tract of land which had been purchased by one of these executory contracts, and possession had been taken by the vendee upon the contract being executed, which was continued down to the time the controversy arose. Judgments were recovered against the devisee of the vendor, and afterwards the party holding under the vendee, without actual notice of the judgments, paid the whole purchase money, took a conveyance, and conveyed to Parks. Then the judgment creditors sold the land on the judgment, obtained a sheriff's deed, and brought ejectment against Parks. The Court of Errors held that the plaintiff could not recover. The purchase money for the land was paid to, and the deed under which Parks held was executed by one Henry Franklin, to whom the devisees of the original vendor had conveyed the premises, and the judgments under which the plaintiff in the ejectment suit claimed, were against the devisees. The judgment creditors claimed that the conveyance to Henry Franklin was void as against the creditors of the grantors, and commenced a suit in chancery against the parties to that conveyance, and obtained a decree setting it aside for the alleged fraud, having at the time of filing the bill, filed a notice of *lis pendens* in the County Clerk's office. The payments were made and the deed under which Parks

held, was given pending the suit. It was scarcely contended that the docketing the judgment against the grantors of Henry Franklin, would alone enable the creditors to question the payments subsequently made; but it was insisted that the *lis pendens* affected the parties holding under the vendee in the executory contract, and that the payments were consequently made in their own wrong. The court, however, held that neither the judgments, nor the *lis pendens*, nor both of them, affected the vendees, or impaired the effect of the payments made, or the deeds under which Parks held.

In Maryland, in the case of *Hampsen* v. *Edilen*, 2 *Har. & Johns.*, 64, it was held, that where a vendee, subsequently to the recovery of a judgment against the vendor, but without actual notice thereof, had paid over the balance of the purchase money and taken a conveyance from the judgment creditors, such vendee was, in equity, entitled to be protected against the claim of the judgment creditors.

These latter cases, besides challenging the consideration due to so high authority, are based on the better reasoning. The conclusions reached are deduced from doctrines so fully established by authority, as to entitle them to be regarded as among the elementary principles of the law; and when applied here afford an easy solution of this case. At the time of the entry of the judgments under which Hopkins and Filley claim, Mrs. Duncan had made a contract with Bell for the premises in question, and had parted with a part of the purchase price. At the time of her purchase there was no suggestion of right or interest to the same in these parties, either actual, or constructive. She took the hazard of the vendor's title, and relied upon his responsibility to make her a deed in due time. She also ran the risk of prior judgments against the vendor, and at her peril was bound to search the records for incumbrances prior to the date of her contract. Her possession was notice to all

the world of her interest. She was the equitable owner of so much at least, as had been paid for and was entitled to a conveyance of the whole of the lands, when the balance of the money should be paid. She had obligated herself to pay Bell the balance, and to assume to pay any one else, might embarrass her or lead to litigation with Bell, or those to whom he might assign his contract with her. These judgment creditors, came into this arrangement rather as intruders. They are given a right to the unpaid purchase money, which, in a proper proceeding, may be secured by them. To this extent, they are to be benefited and it is but right that as to this, they should become the actors.

They should at least have given Mrs. Duncan, or her representatives, actual notice of the entry of their judgments and their claim under them. Whether a simple notice to the vendee of the existence of judgment liens, acquired since her contract, would be sufficient to make any further payments to the vendor, the judgment debtor, at her own peril, it is unnecessary to decide. In my opinion, however, it is not. In a proceeding in the nature of a creditor's bill, payment could be enjoined until the rights of the parties are determined. The party who seeks to interfere with and override a lawful transaction, and intercept payments due under legal obligations, and have the same applied in satisfaction of his claims, should, it seems to me, provide himself with authority from some competent power.

Here, Mrs. Duncan, pursuant to her agreement, has paid all of the purchase money, and taken a deed ; and her heirs now ask that the title so taken be cleared from the cloud raised by the sale of these premises, under the judgments mentioned. To this relief they are entitled. When the sheriff's sale was made, no title remained in Bell, and of course no title passed. Bell had already conveyed to Mrs. Duncan. The rule that the purchaser at sheriff's sale

FILLEY AND HOPKINS *v.* DUNCAN.

becomes possessed of the title and interest held by the judgment debtor at the time of the entry of judgment, is subject in equity to this qualification—that he takes such title, subject to the equities that then existed against him, or which have since arisen, through want of knowledge of such judgments.

Judgment of the court below affirmed.