SAMUEL C. COLT, PLAINTIFF IN ERROR, v. HENRY DUBOIS, AND OTHERS, DEFENDANTS IN ERROR.

1. **Judgments:** LIEN OF. All judgments rendered during a term of the district court, in actions commenced prior thereto, are liens on all the lands of the debtor *within* the county from the first day of such term; and all lands of the debtor *without* the county shall be bound for the satisfaction of a judgment against him from the time they shall be seized in execution.

2. ———: ———. The lien attaches to all lands and tenements of the debtor in the county where the judgment is rendered, whether held by him at the time of its rendition, or subsequently acquired.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Cobb & Marquett*, for plaintiff in error.

At common law, a judgment created no lien in the real estate of defendant. *Shrew v. Jones*, 2 McLean, 78. The Coppock judgment comes within no provision of the statute except that of "all other lands," etc., shall be bound from the time "when they shall be seized in execution." In relation to the Coppock judgment, these lands were after acquired lands, because Martin's title thereto was acquired after the first day of the term, to which day the lien of the judgment relates. A judgment has relation to the first day of the term at which it is rendered (*ergo*, it does not relate to any other day of the term). *Clements v. Berry*, 11 Howard, 408. *Farley v. Lee*, 5 Dev. & B. (N. C.), 169. *Doe v. Bank of Cleveland*, 3 McLean, 140. After acquired lands are not bound by a judgment until execution and levy. *Filley & Hopkins v. Duncan*, 1 Neb., 134. *Roads v. Symmes*, 1 Ohio, 281–313. *Urbana Bank v. Baldwin*, 3 Ohio, 65. *Stiles v. Murphy*, 4 Ohio, 92. To hold any other theory would be to give that plaintiff, who uses the greatest

diligence in obtaining judgment, the least protection. The slothful plaintiff would have two chances over his diligent competitors. 1st. His lien would be equal in respect to property owned by the defendant on the first day of the term, and his mere want of diligence would give him a prior and exclusive lien upon the property of the defendant acquired during the term, so that hereafter, instead of each plaintiff striving to get his judgment early in the term, there would be a slothful emulation among plaintiffs as to who could be the least diligent, and the last day of the term would be the favorite of all, and the maxim: "The law favors the diligent creditor," would be reversed.

*Lamb, Billingsley, & Lambertson,* for defendant in error.

GANTT, CH. J.

This suit was brought in the court below by Henry DuBois to foreclose a mortgage, executed and delivered to him by defendant O. J. Martin, and the mortgage was filed for record on the thirteenth of March, 1875. The plaintiff in error and several other parties were defendants; but the only matter now in controversy is between the plaintiff in error and defendant J. W. Hartley. This controversy arises upon the following facts: On the eighteenth of October, 1872, defendant O. J. Martin acquired title to the north half of the south-west quarter, and the south-east quarter of the south-west quarter, and the south-west quarter of the south-east quarter of section twenty-eight, in township twelve north, of range six east, in Lancaster county. In August, 1872, Isaiah Coppock commenced an action against O. J. Martin, in the district court of said county, and on the thirtieth of October, 1872, at a regular term of said court,

which was begun on the first day of the same month, he recovered a judgment against said defendant Martin in said action. Afterwards Coppock assigned this judgment to defendant J. W. Hartley, who thereby became the legal owner of the same. On the second of November, 1874, O. J. Martin and Ann, his wife, executed and delivered to S. C. Colt, plaintiff in error, a mortgage on all the above described lands. The plaintiff complains that, under these facts, the court below erred in deciding that the Coppock judgment, assigned to Hartley, had priority of lien over his mortgage.

It is insisted that the judgment, in this case, has relation to the first day of the term at which it was rendered, and as all the lands described were subsequently acquired by defendant, O. J. Martin, the judgment created no lien upon any of these lands, though the title was acquired before the rendition of the judgment; and therefore the plaintiff's mortgage has priority of lien over the judgment.

The rule will not be questioned that, under our statute relative to judgment liens, all judgments rendered during the term, in actions commenced prior thereto, are liens on all the lands of the debtor within the county from the first day of the term. This interpretation is given to the statute in the case of *Miller v. Finn*, 1 Neb., 294; and it places all such judgments, entered at the same term, upon equality in regard to liens, and thereby does equal justice to creditors whose judgments are necessarily entered on different days of the terms.

Section 476 of the code provides that "the lands, tenements, goods, and chattels, not exempt by law, shall be subject to the payment of debts," and may be taken in execution and sold.

Section 474 provides that executions may be directed to different counties at the same time, and section 477 declares that "the lands and tenements of the debtor

*within the county* where the judgment is entered shall be bound for the satisfaction thereof from the first day of the term at which the judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered. All other lands, as well as goods and chattels of the debtor, shall be bound from the time that they shall be seized in execution."

In construing these sections together, it seems clear that the words "all other lands" must necessarily refer to lands *without* "the county where the judgment is rendered"; and under section 474 executions may be directed to the counties in which such lands are situated, and they "shall be bound from the time they shall be seized in execution."

A judgment does not create a specific lien upon any particular lands of the judgment debtor. It, at most, creates a general lien upon all his estate in the county in which the judgment is rendered. But the judgment creditor acquires no interest in the land itself by his lien. As was said in the case of *Brace v. Duchess of Marlborough*, 2 P. Wm., 491, the lien is neither a *jus in re*, nor *jus ad rem*, and amounts only to a security against subsequent purchasers and incumbrances. 4 Kent Com., 437. It confers only the right to levy on the land to the exclusion of other adverse interests subsequent to the rendition of the judgment, and this right applies to all the lands and tenements of the debtor in the county where the judgment is entered, whether held by him at the time of the rendition, or subsequently acquired.

In *Filley & Hopkins v. Duncan*, 1 Neb., 134, CROUNSE, J., in delivering the opinion of the court says, that the lien of a judgment does not attach to lands acquired after its rendition, so as to affect *bona fide* pur-

chasers.   That question was not before the court.   It
appears from the statement of facts in that case that in
July, 1859, one Bell, being in possession of certain real
estate, and holding the legal title to an undivided half
thereof, and a contract of purchase for the other half,
sold the same to Mrs. Duncan, and gave her a bond to
convey the same to her as soon as he obtained a deed
authorizing him to do so.   Mrs. D. immediately took
possession, and in October of that year paid nearly the
entire amount of purchase money.   In May, 1860, Bell
executed and delivered to Mrs. D. a deed for the premises.
In December, 1859, certain judgments were recovered
against Bell in the district court, under which the un-
divided half of the lands in controversy was sold.   The
action was brought to have the sheriff's deed executed
in pursuance of such judicial sale declared void.

In *Calhoun v. Snyder*, 6 Binney, 135, it was held that
the lien of a judgment did not attach to lands in which
the judgment debtor had *no interest* at the time of its
rendition.   Afterwards it was held in that state that if,
at the time of the rendition of the judgment, the debtor
had entered into a binding contract for the purchase of
land and afterwards acquired the legal title, the lien at-
tached and took precedence of a judgment entered
against the debtor immediately after he had acquired
the legal title to the same.   *Stephen's Appeal*, 8 W. &
S., 186.   Freeman on Judgments, 367.

In *Roads v. Symmes*, 1 Ohio, 314, the case of *Cal-
houn v. Snyder* is cited with approval, and followed.

In *Stiles et al. v. Murphy*, 4 Id., 98, the court, in re-
ferring to *Roads v. Symmes*, say:   " That decision may
have been an innovation upon established principles of
law—it may have been a departure from true policy un-
der the circumstances in which we are placed—but it
would be a more dangerous innovation, and a wider de-
parture from true policy *now* to disturb it."

Colt v. DuBois.

It is undoubtedly true, that where a rule of construction, upon which titles to real estate depend, has been adopted, it may lead to great inconveniences, if not injustice, to change it.   But as the question presented by this case has never before been submitted to this court, we deem it best to disregard the *dictum* in the case of *Filley v. Duncan,* and lay down what we deem to be the correct rule, subjecting land acquired subsequently to the rendition of a judgment to its payment.   The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.