Berkley v. Lamb.

EDWARD BERKLEY, APPELLANT, V. W. J. LAMB AND OTHERS, APPELLEES.

**Judicial Sale:** PRACTICE: FINAL ORDER. In July, 1873, L. & B. recovered a judgment against W. for the sum of $450.00, in the probate court of Lancaster county, a transcript of which was filed in the office of the clerk of the district court on the nineteenth day of November, of that year. L. & B. assigned the judgment to Boyd, who assigned to Brush. On the fifteenth day of January, 1874, W. purchased lot 10, in block 103, in the city of Lincoln, and at the same time executed and delivered to his wife a quit claim deed for the lot in question. In March following W. and wife conveyed the lot in question to Berkley. In 1875, an execution issued on the judgment under which the lot in question was sold. Berkley and wife moved to set the sale aside upon the ground that the judgment *was not a lien* upon the lot, which motion was sustained, no appeal being taken. *Held*, Upon a petition being filed by the purchaser to enjoin a sale of the premises under a second execution, that the decision setting aside the sale was final and conclusive.

THIS was an appeal from the district court of Lancaster county, and the facts are set forth in the opinion.

*Mason & Whedon*, for appellant.

1.   It is respectfully submitted that under our statute a judgment is not a lien upon after acquired property. *Roads v. Symmes*, 1 Ohio, 313. *Lessee of Phelps v. Butler*, 2 Ohio, 224. Sec. 477 General Statutes, page 605. The statute declares the lands and tenements of the debtor shall be bound for the satisfaction of any judgment against such debtor from the first day of the term at which judgment shall be rendered, except as to judgments by confession or judgments rendered at the same term at which the action is commenced, and they shall bind such lands only from the day on which such judgments were rendered, and all other lands of the debtor shall be bound from the day they shall be

seized in execution. The term "all other lands" must include after acquired lands.

2. The rule of construction, that where the legislature adopt the statute of another state they adopt with it the judicial interpretation of the highest tribunal of such state, is invoked, and it is respectfully submitted that the law of this state, as made by the legislature thereof, is that a judgment is not a lien upon after acquired lands aliened by the debtor before levied upon. *Elmendorf v. Ferry Co.*, 10 Wheat, 153. *Smith v. Cowdry*, 1 Howard, 38. *Bemis v. Becky*, 1 Kan., 226. *Harrington v. Smith*, 28 Wis., 43.

3. The judgment and determination of the court in setting aside the sale of this property was final, and remains unreversed and unmodified; and if the owner of this judgment was aggrieved by that order he should have appealed from the same or taken the same up on error. The judgment is conclusive of the title of the parties against whom it is rendered whenever the title has been the subject matter of the suit and has been adjudicated. *Shirley v. Fearne*, 33 Miss., 666. *Danaher v. Prentiss*, 22 Wis., 316. *Executors of Tate v. Hunter*, 3 Strobhart, Esq., 139.

*H. H. Blodgett*, for appellees.

1. By the common law of England lands purchased by debtor after judgment, but aliened before levy of execution, were bound by the lien. *Colt v. Dubois*, 7 Neb., 391. Freeman on Judgments, 367. *Ridge v. Prather*, 1 Blackf., Ind., 401. *Trustees v. Watson*, 8 Eng., Ark., 74. 4 W. Va., 605. 4 Kent, 435–436. 15 Johns, 464. 2nd Sneed, 665. 1st Minn., *Steel v. Taylor*, 274. 3 Har & McH——, 449. 4 Peters U. S. R., 136. Argument in 13 Eng. Ark., 74. Sudgen on Vendors, vol. 2, 103.

In *Stiles v. Murphy*, 4 Ohio, 98, the court, comment-

ing on *Roades v. Symmes*, 1 Ohio, 313, regretted that such a rule of law had ever been established in the state of Ohio. And says Freeman on Judgments, 367, "It is clearly repudiated in favor of the common law doctrine that the lien attaches to after acquired lands."

2. Another point relied on by plaintiff is that upon motion for confirmation of sale heretofore had, the court refused to confirm the sale, and that said motion is a trial of the rights of property in litigation, and ultimately determines the rights of the parties by the court refusing to confirm the sale. But this is not the law. Rorer on Judicial Sales, 55. Freeman on Executions, 311, and cases there cited. It must necessarily follow, as the court refused to confirm the sale, that the purchaser at the sale would be entitled to his money back, and the case would stand in *statu quo* as if nothing had been done. Such is the rule of law established in Kansas and Ohio, under a statute same as our own. *Kahler v. Ball*, 2 Kan., 160, and cases there cited in Ohio sustaining the same. *Challas v. Wise & Crookham*, 2 Kan., 276. Freeman on Executions, 311. Nothing can be inquired into except the irregularity of the proceedings of the sheriff. 2d Kan., supra. Freeman on Executions, 311.

MAXWELL, CH. J.

In July, 1873, Lamb & Billingsley recovered a judgment against L. B. Wilkinson for the sum of $450.00 in the probate court of Lancaster county, a transcript of which judgment was duly filed in the office of the clerk of the district court of that county, on the nineteenth day of November of that year. On the same day Lamb & Billingsley sold and assigned said judgment to S. M. Boyd, who, on the sixteenth day of December, 1873, assigned the same to Martin H. Brush,

one of the defendants. On the fifteenth day of January, 1874, Boyd and wife conveyed to Wilkinson lot 10, in block 103, in the city of Lincoln, and at the same time Wilkinson executed and delivered to his wife a quit claim deed for the lot in question, both deeds being filed for record at the same time. On the twenty-eighth of the following March, Wilkinson and wife conveyed the premises in question to the plaintiff. In July, 1875, an execution was issued on the judgment above set forth, and levied on the lot in controversy, which was sold under said execution. In November, 1875, the plaintiff and L. B. Wilkinson filed objections to the confirmation of the sale as follows:

LAMB & BILLINGSLEY, ⎫
          v.            ⎬
L. B. WILKINSON.        ⎭

And now comes the defendant and Edward Berkley, and file their exceptions to the confirmation of the sale heretofore had in this case:

That said plaintiffs, Lamb and Billingsley, recovered the judgment upon which the execution is issued on the tenth day of July, 1873. That upon the nineteenth day of November, 1873, a transcript of said judgment was filed with the county clerk of said county. That afterwards and on the fifteenth day of January, 1874, the real estate described in the return as lot ten, in block 103, was conveyed to the defendant L. B. Wilkinson. That on the day last aforesaid, said Wilkinson sold and conveyed said lot to Mary Wilkinson, and on the twenty-eighth of March, 1874, Mary Wilkinson conveyed said lot to the said Edward Berkley, by deed of general warranty, and on the thirtieth of March, 1874, L. B. Wilkinson conveyed by quit claim deed all interest which he had in said premises to said Berkley. That said deeds from Mary Wilkinson and from the defendant, L. B. Wilkinson, were both

filed for record on the thirtieth day of March, 1874, at 4:20 P.M., in the office of the county clerk of said county, and duly recorded, as will more fully appear in the deed records of said county, reference thereto being had.

That the execution under which said lot ten was taken was issued on the twenty-seventh day of July, 1875, and was the first execution issued out of this court on said judgment, and that the same was not levied on said lot ten until the twenty-seventh day of July, 1875.

That at that time, said Berkley was the owner of said lot, and is now the owner thereof, and for proof of these facts, reference is had to the records of this court. The said Berkley asks that said sale be set aside, as a confirmation thereof will tend to throw a cloud upon his title.

MASON & WHEDON,
*For defendant and Edward Berkley.*

In May, 1876, a motion for the confirmation of the sale and the exceptions above set forth came on for hearing and were argued by counsel for the respective parties, and submitted to the court.

In September, 1876, the court rendered a judgment sustaining said exceptions and setting aside said sale, which order and judgment still remain in full force.

In 1878, Brush caused an execution to issue on said judgment, which was levied on the lot in question, and a sale of the same being about to take place under said levy, the plaintiff filed a petition in the district court of Lancaster county setting forth the above facts, and prayed for an injunction to restrain the sale. The defendants answered the petition of the plaintiff, alleging that at the time of the conveyance of lot ten, in block 103, in the city of Lincoln, by L. B. Wilkinson

Berkley v. Lamb.

to Mary Wilkinson, they were husband and wife, and that the conveyance was made in this state, and was made to place the property out of the reach of the creditors of L. B. Wilkinson, and that said conveyance was without consideration, and was not made at the same time as the conveyance from Boyd and wife to L. B. Wilkinson. The defendants also deny that the judgment or final order setting aside the sale still remains in full force. The plaintiff in his reply admits that Mary Wilkinson was the wife of L. B. Wilkinson at the time of the execution of the deed, and that the entry on motion docket, as set forth in the answer, is true, and denies all other allegations of new matter. On the trial of the cause the plaintiff introduced the motion docket to show that the exceptions to the sale had been sustained. The defendants offered no evidence. The court found the issues in favor of the defendants and dismissed the cause. The plaintiff appeals to this court.

It will be observed that the only ground upon which it was sought to set aside the sale in question, was that the judgment was *not a lien* upon the premises, and that a sale thereof would create a cloud on the title of the purchaser. Is the decision of the court upon this motion final and conclusive between the parties, no appeal being taken?

In *Mayer v. Wick*, 15 Ohio State, 522, the court say: "The question whether, under all the circumstances, the contract of sale ought to be rescinded has already been adjudicated. A motion was made by Mayer to rescind the contract—to set aside the sale—and that motion was heard and decided. The powers of the court hearing the motion were plenary over the subject matter, extending to all equitable as well as legal grounds for setting the sale aside. The parties having omitted to take measures for a review of that de-

cision upon error, or otherwise to impeach it by direct proceedings, are concluded by the decision."

In *Paulett v. Peabody*, 3 Neb., 198, the court say : "The statute, it is true, points out very clearly certain steps which must be taken by the officer charged with the duty of making the sale, not one of which can be omitted, and in respect to which the court is given no discretion ; but this enumeration on the part of the sheriff is not to be considered a limitation or restriction upon the authority of the court, to see to it that in all other respects the proceedings are properly conducted, and the sale fairly made, so that neither the parties to the suit nor the sale shall be defrauded."

That an order confirming or setting aside a sale is a final order will not be denied, and under our code may be reviewed by appeal or petition in error, the mode of reviewing the case being dependent on the character of the action. If a sale is set aside for a mere irregularity in making the sale, or from a failure to comply with the requirements of the statute, such order setting aside the sale will not prevent the land being again offered under the judgment. Where, however, a sale is set aside upon the ground, raised distinctly in the motion, that the judgment was not a lien upon the land, and that no title will pass by the sale, such order, unless reversed, becomes final and conclusive upon the parties.

In the case at bar, the very ground upon which the sale was set aside was, that the judgment was not a lien upon the lot in controversy. Can the plaintiff in execution disregard the order of the court and immediately offer the property again for sale ? No one will contend that he can do so. As there were no special findings on the motion, the exact ground upon which the motion was sustained is not apparent, although it is reasonable to infer that the court found that L. B.

Berkley v. Lamb.

Wilkinson was not, in fact, the owner of the lot in question, but that said real estate was paid for and owned by Mary Wilkinson, his wife.

In the case of *Colt v. Dubois*, 7 Neb., 391, it was held that the lien of a judgment attaches to all the lands and tenements of the debtor in the county where the judgment is rendered, whether held by him at the time of its rendition or subsequently acquired. We adhere to that decision, but the lien of the judgment attaches only to the interest of the debtor in the land. *Filley & Hopkins v. Duncan*, 1 Neb., 145. *Uhl v. May*, 5 Neb., 157. *Galway, Semple & Co. v. Malchow*, 7 Neb., 285. And the lien can attach to no greater interest than that owned by the debtor. It is claimed that the deed from Wilkinson to his wife is void. At law such a deed is void, but equity will sustain it when made upon a sufficient consideration, or in pursuance of a valid antenuptial agreement. *Aultman, Taylor & Co. v. Obermyer*, 6 Neb., 260. *First Nat'l Bank v. Bartlett*, ante p. 319. But as these questions were properly before the court in the former proceeding they cannot be enquired into in this. The validity of the lien of the judgment having been in issue in the proceeding to set aside the sale, the decision thereon is final and conclusive, no appeal being taken. The judgment of the district court is reversed and the injunction made perpetual.

LAKE, J., dissented.

COBB, J.

While I agree with the chief justice that the judgment of the district court ought to be reversed, for the reasons stated by him, yet, in my opinion, there is other and far graver error in the record, by reason of which the judgment should not stand.

The title to the lot in question was acquired by Wil-

kinson after the judgment had been filed and docketed in the district court, and passed out of him by conveyance duly executed and recorded before the same was levied upon. We have, therefore, fairly presented the important question: Does a judgment, entered and docketed in the district court, constitute a lien upon real estate situated in the county, and afterwards acquired by the judgment debtor, before levy of an execution issued upon such judgment?

Section 477 of the code of civil procedure is in the following words: "The lands and tenements of the debtor within the county where the judgment is entered shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered. All other lands, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution." The meaning of this section, as applicable to the question now under consideration, has been construed by this court in the case of *Colt v. Dubois*, 7 Neb., 391; but I am unable to agree in the conclusion there arrived at by the court.

The object of the section is to prescribe the times when judgments in the several classes of cases should attach to or become liens upon property, and for that purpose the framers of the section divided the subject into three classes.

The first, or general class, includes those cases where the action shall have been brought according to law and the regular practice of the court, and where the debtor has lands in the county. In that case the lien attaches as of the first day of the term, without regard to the particular day of the term upon which the

judgment may be actually rendered. The second class embraces those cases where, no suit having been commenced before the first day of the term, yet by means of a suit commenced on or after the first day of the term, or by the voluntary appearance and confession of a party without suit, a judgment is entered. In this class the judgment becomes a lien upon and binds such lands only from the day on which such judgments are rendered.

And for the purpose of providing for all cases not falling within either the first or second classes, they provided a third class, to-wit: "All other lands, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution."

It is not my purpose to take exception to the construction placed upon this latter clause of the section in the case above referred to, in so far as it goes. I agree that the words "other lands" refer to the lands of the debtor without the county; but I also think they have a broader application, and embrace exactly what the words imply in their ordinary signification, to-wit: all other lands—all lands not falling within the meaning of the first or second class of words as above divided.

Now then, do after acquired lands fall within the first or second classes? Obviously not in the very nature of the case. A judgment against A. cannot become a lien from the first day of a term commencing January 1st, 1878, upon land then owned by B., but which he conveyed to A. January 1st, 1879. If not, then such lands as may be conveyed by B. to A., after the rendition of such judgment, are lands other than those upon which such judgment against A. can become a lien from the first day of such term (or from the day on which judgments are rendered), and fall within the meaning of the words, "all other lands," etc. And

22

bearing in mind the manifest object of the section, to fix and settle the time when every species of property of the debtor, of whatever kind and however situated, should be bound by the judgment, can there be any doubt but that the legislature used these broad and comprehensive terms for the very purpose of including after acquired lands?

I think this the plain and natural construction of the section, and the one which it has received in at least three states, and by three generations. It is a literal copy of the statute of Ohio passed June 6, 1795, and which I think was copied from the Pennsylvania statute, although I have not the earlier statutes of that state at hand. The supreme court of Ohio, as early as 1824, construed this statute, and approving *Calhoun v. Snyder*, 6 Binney, 145 (not in the state library), states the law as settled, as well in Ohio as in Pennsylvania, that a judgment lien did not attach to after acquired lands until execution levied. *Roads v. Symmes*, 1 Ohio, 281–313. The law of these cases has been followed, both in Ohio and Pennsylvania; and while it has been questioned and discussed, I am not aware of its having been successfully assailed.

It is a part of the history of our state, which will not be questioned, that our legislation has in great part been patterned after that of the great central state of Ohio, as was very natural and proper, that state having contributed by emigration a large portion of our pioneer population, many of whom took an important part in framing our laws. Our codes, both civil and criminal, are in great part copies of the codes of Ohio, and the section in question is a literal copy of the corresponding section of its code.

Judge Dixon, in the case of *Draper v. Emerson*, uses the following language in laying down a rule of law which I think obtains universally: "It is a settled

rule in the construction of statutes that where a statute has received a judicial construction in another state, and is then adopted, it is taken with the construction which has been so given to it. Such is the presumed intention of the legislature." 22d Wis. Rep., 147.

This statute had been construed first in Pennsylvania, and again in Ohio. With knowledge of that, our legislature, in framing its code of procedure, selected this very provision, and adopted it as a part of our judicial policy in preference to the provisions of the statutes of the other states, presumably because they were satisfied with this law as it had been construed and administered in the parent state.

I purposely refer to the above mentioned section of the statute as the source of all liens by virtue of judgments rendered in the district courts of this state, for I do not think it will be seriously contended that such judgments create any lien, before execution levied, by virtue of the common law. While I say this, I am aware that many cases can be found in which courts speak of the common law as regulating the liens of judgments, etc. But it may be said truthfully, that the words "common law" have often been used very loosely, as well by courts as by text writers, and have often been pressed into the service as authority for any proposition for which the writer is wanting in statutory enactment. By the common law, only goods, chattels, and profits of lands could be taken on execution. *Johnson v. Hahn,* 4 Neb., 139–144, and authorities there cited. 2 Roll, Abr., 475. 2 Bac., Abr., 686.

Mr. Justice Daniel, of the supreme court of the United States, says: "Thus we find it laid down by compilers and by commentators upon the law of England, that the lien of judgments upon lands in that country was created by the statute *de mercatoribus,* also styled the statute of Acton Burnell, 11th of Ed. I, and

by statute of Westminster 2d, 13th Ed. I, cap. 18," etc. *Snead v. McCoull*, 12 How., 414.

Blackstone informs us that the municipal law of England may with sufficient propriety be divided into two kinds: the *lex non scripta*, the unwritten or common law; and the *lex scripta*, the written or statute law. 1 Black. Com., sec. 3.

Accordingly, while we have to some extent adopted the common law of England as the law of this state, we have not adopted the *lex scripta* or statute law of that country. Section 1, chapter 10, General Statutes, p. 159. Therefore, as I view it, we must look alone to our statute as we have borrowed it from the state of Ohio, together with whatever construction it had received there as well as here, for our understanding of the law of judgment liens. While it may be doubted whether the construction of this law necessarily arose in the case of *Filley and Hopkins v. Duncan*, 1 Neb., 134, yet it cannot be denied but that it was proper to be considered by the court in that case, or that it was considered and squarely decided. I think it equally true, that that decision met the approval of the bar and people of the state. All real estate transactions in the state for a period of ten years have been made in view of it as the settled law of the land; and I think it unfortunate that its authority should have been impaired. In view of this question, as in many others, it does not matter so much how the law is settled, just so it is settled on a permanent basis; and believing as I do that the above views must ultimately prevail in this state, I would like to see this court return to them at the first opportunity.

JUDGMENT REVERSED.