| 13 | 97 |
| 51 | 243 |

JULIUS KRUGER, PLAINTIFF AND APPELLANT, V. THE ADAMS AND FRENCH HARVESTER COMPANY AND WELLS, DEFENDANTS AND APPELLEES.

Homestead: LIEN OF JUDGMENT. W. was the owner of a tract of land acquired by him from the United States under the provisions of the homestead law of congress. A judgment in favor of the A. & F. H. Co., and against W., rendered upon a cause of action which accrued before the issuance of a patent for said lands was docketed in the proper office. W. conveyed the land to K. Afterwards the A. & F. H. Co. caused an execution to issue on their judgment against W., and levied on the land. K. brought action *quia timet* and injunction against the A. & F. H. Co. W. intervened as a defendant. Trial to referee, who found that when W. executed the conveyance to K., K. knew of the judgment and retained the amount of the face value of said judgment, and that it was then understood and agreed by and between said K. and W. that he (K.) was to pay and apply said sum upon said judgment and satisfy the same. Also, that after the execution of the deed and the agreement mentioned in findings 4 and 5, said W. authorized certain attorneys to bring an action to remove the cloud caused by the said judgment from the land, and agreed to pay them for their services in so doing the money belonging to W. then retained by and in the hands of K. *Held,* That the two above findings, taken together and viewed in the light of the testimony upon which they were severally made, show no lien upon the part of the A. & F. H. Co. upon the land in question, nor any personal cause of action against K.

9

APPEAL by plaintiff from a decree of the district court of Platte county, POST, J., presiding.

*Byron Millett,* for appellant.

1.   The judgment not being a lien on the land when Wells conveyed the same to Kruger, he had a right to make whatever application of the purchase money he pleased.

2.   The agreement was not champertous.   4 Bl. Com., *135.   *Putney v. Farnham,* 27 Wis., 187.   *Nebraska City v. Gas Company,* 9 Neb., 339.   *Stearns v. Felker,* 28 Wis., 597.

*Whitmoyer, Gerrard & Post,* for appellees.

1.   The land became a fund in plaintiff's hands for the satisfaction of the judgment, and he can not restrain the sale without first paying over the money.   *Fuller v. Hunt,* 12 Western Jurist, 263.   *Crawford v. Edwards,* 33 Mich., 354.   *Miller v. Thompson,* 34 Id., 10.   *Manwaring v. Powell,* 40 Id., 371.

2.   The contract is void for champerty.   *Backus v. Byron,* 4 Mich, 535.   *Baker v. Baker,* 14 Wis., 131. *Key v. Vattier,* 1 Ohio, 132.   *Elliott v. McClelland,* 17 Ala., 206.   *Thompson v. Warren,* 8 B. Mon., 488.   *Lathrop v. Amherst Bk.,* 9 Metc., 489.   *Brown v. Beauchamp,* 5 T. B. Mon., 413.   *Ross v. Scobey,* 13 Ind., 117. *Lafferty v. Jelly,* 22 Id., 471.   *Arden v. Patterson,* 5 Johns. Ch., 48.   *Stearns v. Felker,* 28 Wis., 596.   *Thurston v. Percival,* 1 Pick., 406.

COBB, J.

For a more ready understanding of this case we refer to the error case between the same parties, 9 Neb., 526. The result of our decision was a new trial of the cause in

the district court.   Such trial was had before a referee, upon whose report and findings of fact and of law a decree was entered in favor of the defendant company, and the plaintiff brings the cause to this court by appeal.

In that opinion the court say: "The petition demurred to substantially avers that Kruger, in consideration of the sale of the land by Wells to him at a certain price agreed upon, agreed to pay off the judgment of the harvester company against Wells.   This allegation must, for the purposes of this case in the present state of the pleadings, be taken as admitted.   Upon this promise the harvester company could have maintained an action against Kruger.   *

*   *   If it is true that Kruger agreed with Wells, in consideration of the said conveyance, to pay off the said judgment   *   *   *   then he cannot be said to have done equity in the premises either in respect to the rights of Wells or to those of the defendants in error when he comes into court to enjoin the collection of the judgment out of said lands without first paying off the judgment according to his agreement."

On the new trial the refereee made twenty separate findings of fact, among them the following:

"4th.   That on the twentieth day of August, 1877, the said W. H. Wells and wife conveyed by warranty deed to Julius Kruger the south-west quarter of section 20, township 20, range one west of 6th p. m., the same upon which W. H. Wells made homestead entry November 8, 1872, and upon which said land a patent was issued to the said Wells by the United States, May 1, 1877, under the act of Congress approved May 20, 1862.

"5th.   That Julius Kruger (the plaintiff herein) at the time he purchased the said land from the said Wells knew of the judgment mentioned in finding No. 2, and retained of the purchase price of said land $266.20, the amount of said judgment, and it was understood and agreed by and between Kruger and Wells at the time said $266.20 was

by said Kruger retained, that he, Kruger, was to pay and apply said sum upon said judgment of Adams & French Havester Co. v. Wells et al., and that he, Kruger, was to satisfy said judgment out of said $266.20."

These findings would be conclusive of the case were they standing alone. There are numerous decisions as well as authorities of text books to the effect that where a purchaser buys a piece of real property upon which there is an incumbrance, and he buys it expressly subject to such incumbrance, the property in the hands of such purchaser is held to be a fund for the payment of such incumbrance. The facts in such cases generally showing, and when not shown they will be presumed, that the amount of such incumbrance was deducted from the agreed value of the property and retained by the purchaser, so that the vendor, having in fact paid off the incumbrance with his property, it would be inequitable to leave the debt standing against him as a personal obligation.

But in all of the cases cited, as well as others which I have examined, there was an incumbrance upon the land, and that seems to be the central idea of them all. I have looked in vain for a case where, as between vendee and vendor, lands were held to be a fund for the payment of a debt of the vendor, not a lawful lien upon the land. The answer of the defendant company admits that the land in question was acquired by Wells under the provisions of the United States homestead law, that the patent therefor to him was issued and dated on or about the first day of May, 1877, and that the judgment in favor of defendant company was rendered on two notes of the said Wells, executed by him on the twentieth day of July, 1875. These admitted facts, taken in connection with the provisions of the United States homestead law, leave it clear that the judgment of defendant company was no lien on the land. The land then, not being a fund for the payment of defendant's judgment while in the hands of Wells, it was not after it

passed to the hands of Kruger, unless it was by virtue of a contract. The fifth finding of fact, taken alone, would establish such a contract, but it must be taken in connection with the eleventh finding of fact, which is as follows:

"11th. That after the execution of the deed and the agreement mentioned in findings Nos. 4 and 5, said Wells authorized Millett & Son and A. E. Pinckney to bring an action as attorneys to remove the cloud from the title to said land occasioned by said judgment, and agreed to pay them for their services in so doing the $266.20 belonging to said Wells, and then in plaintiff's hands."

It will be observed that this finding does not state how long after the execution of the deed from Wells to Kruger it was that Wells employed attorneys to remove the said judgment as a cloud from the title of the land; nor indeed whether it was before or after the delivery of the deed. But, if we look into the testimony upon which these findings were made, we will see that the employment of these attorneys, so far as they were ever employed by Wells, was before the execution or delivery of the deed. The testimony of Kruger, Millett, and Pinckney leave no doubt on this point. As to the testimony of Wells, he absolutely and repeatedly (in his deposition) denies ever having employed Millett or Pinckney, or even having conversed with either of them on the subject. So that in making the eleventh finding of fact the referee must have, as I think he ought, rejected the testimony of Wells as untrue. This finding, taken in connection with all the testimony upon which it was made, neutralizes the fifth finding, as it shows that it was not the understanding or desire of Wells that either the land which he sold or the purchaser personally should be held liable to the defendant company for the amount of the judgment, but that the money remaining in Kruger's hands should be devoted to litigating it. And that the said money was, at Wells' request and by his di-

rection, paid to Millett and Pinckney for their services in procuring the decree of court declaring the said judgment no lien on the land. Upon this state of facts we know of no rule of equity or principle of justice which Wells can invoke either as against Kruger or the land.

As to the defendant company, it is difficult to see upon what point it can base its claim for relief. It had no lien upon the land which it could lose or which could be affected by the transfer of the title from Wells to Kruger. While the retention of purchase money by Kruger might have been a good consideration for a promise on his part to pay them the face of the judgment, yet taking all the findings together and viewing them by the light of the testimony on which they were made, it is obvious that he did not retain any portion of the purchase money, but that he paid it out and disbursed it in strict accordance with the request and direction of Wells.

A point is made, and urged, and apparently regarded by counsel on both sides as a controlling one, upon the character of the contract entered into between Kruger on the one part and Millett & Son and A. E. Pinckney on the other for the prosecution of this case; it being urged by counsel for the defendants that such contract is void for champerty, etc. Were this an action between the parties to said contract, or even in this case, if any claim of either party was predicated upon it as an unexecuted contract, it might be deemed necessary to examine the question raised; but viewing it as we do, it makes no difference whether such contract was open to the objection of champerty or not. Indeed the said contract as an instrument of evidence in the case is entirely irrelevant. The only purpose for which it could be material would be to show the application which was made of the said balance of purchase money by Wells, and that was abundantly proved by living witnesses.

The decree of the district court is reversed, and a decree entered in favor of the plaintiff appellant in accordance

with the prayer of his petition, and making the injunction perpetual.

DECREE ACCORDINGLY.