HANNAH J. DUELL, APPELLANT, V. HENRY POTTER ET AL., APPELLEES.

FILED APRIL 21, 1897.   No. 7142.

1. **Lien of Judgment.** The lien of a judgment of the district court attaches to all the lands of the debtor within the county where the judgment was rendered, whether then owned by him or subsequently acquired.

2. **Homesteads: EXEMPTIONS.** Although lands acquired as a government homestead are forever exempt from liability for the debts of the patentee created before the patent was issued, such lands in the hands of a subsequent owner are not exempt by the federal homestead law from the payment of the debts of the latter incurred prior to the issuance of the patent.

APPEAL from the district court of Buffalo county. Heard below before HOLCOMB, J. *Affirmed.*

*Greene & Hostetler*, for appellant.

*Dryden & Main*, contra.

NORVAL, J.

This is an appeal from the decision of the court below sustaining a general demurrer to the petition, and

dismissing plaintiff's action brought to enjoin the sale upon execution of the following described real estate, to-wit: The northeast quarter, section 4, township 12, range 14, in Buffalo county, this state. The facts averred in the petition, and by the demurrer admitted to be true, may be summarized thus: On the 3d day of October, 1883, Sardius Smith entered, under the provision of the United States homestead law, the above described land; that prior to making final proof, to-wit, on July 27, 1886, he died, leaving him surviving his widow, Louisa Smith, and two children, the plaintiff herein and one Jay T. Smith; that the widow made final proof of said land on July 5, 1890, and a patent for the premises was issued to her on November 13, 1891; that on February 8, 1892, said Louisa died seized of said real estate, leaving her only heirs at law, this plaintiff and said Jay T. Smith; that on the 23d day of April, 1890, and prior to the making of final proof, Henry Potter, one of the defendants herein, recovered a judgment in the district court of Buffalo county against the said Jay T. Smith for the sum of $1,461.19, on a note held by Potter as collateral security for the debt of said Sardius, the original entryman; that on February 25, 1892, plaintiff purchased her brother's undivided one-half interest in said land, and ever since has been the owner of the fee of the property; and that subsequently said Potter caused an execution to be issued upon said judg-ment and the said real estate to be seized thereunder. Jay T. Smith having acquired title to the undivided one-half interest in the land subsequent to the rendition of the judgment, and sold such interest to his sister before the levy of said execution, the point is made that the plaintiff took the land unaffected by this judgment. In *Filley v. Duncan,* 1 Neb., 134, in an opinion by CROUNSE, J., it was decided that as to *bona fide* purchasers the lien of a judgment does not attach to subsequently acquired real estate until the levy of an execution. The same question was again before the court in *Colt v. Du Bois,* 7 Neb., 391, where *Filley v. Duncan, supra,* was overruled, the court

holding that judgments are liens on all the lands of the debtor within the county where the judgments are rendered, either then owned by him or subsequently acquired. The latter rule has been followed in *Berkley v. Lamb*, 8 Neb., 399, and is now the settled law of this state.

There remains to be considered the proposition whether these lands are exempt from liability for this judgment under the provisions of the act of congress of the United States, approved May 20, 1862, entitled "An act to secure homesteads to actual settlers on the public domain." Section 4 of said act (Revised Statutes, U. S., sec. 2296) declares: "No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." This provision has been often under consideration by this court, and in an unbroken line of decisions it has been ruled that lands acquired under said act of congress are exempt from liability for debts contracted by the patentee before the patent was issued. (*Smith v. Schmitz*, 10 Neb., 600; *Smith v. Steele*, 13 Neb., 1; *Kruger v. Adams & French Harvester Co.*, 13 Neb., 97; *Baldwin v. Boyd*, 18 Neb., 444; *Brandhoefer v. Bain*, 45 Neb., 781.) In the last case it was decided the rule applied where the patentee had conveyed the land, and subsequently acquired the title. In no case in this court, or in any other, so far as we are advised, has been determined the question here involved, namely, that the said act of congress protects lands acquired under its provisions from debts contracted prior to the date of the patent by one other than the patentee. The section under consideration has never been given a literal or strict construction by the courts, but has been invariably so interpreted as to carry out the purposes and object of its adoption. Thus a literal rendition of the language of the provision quoted would prevent a voluntary incumbrance of a federal homestead by mortgage to secure a debt contracted by the patentee prior to the issuing of the patent, and yet this and other courts have held that the law does not

prohibit such a voluntary incumbrance of the land. (*Jones v. Yoakam*, 5 Neb., 265; *Blanchard v. Jamison*, 14 Neb., 246; *Skinner v. Reynick*, 10 Neb., 323; *Orr v. Ulyatt*, 43 Pac. Rep. [Nev.], 916.) The federal homestead act never has been regarded, or construed, merely as one of exemptions, nor is such its purpose and scope. On the contrary, the title to the act, as well as the body of the law, plainly indicates that the object of its framers was to secure homes to actual settlers on the public lands, and for the better accomplishment of that purpose congress wisely prescribed the condition upon which title to such lands should be conveyed, viz., that the lands acquired under its provisions should not be liable for any antecedent debt of the patentee. Further it did not undertake to legislate. Judge Dillon, in construing said section, in the course of his opinion in *Seymour v. Sanders*, 3 Dill. [U. S.], 437, said: "It is not difficult to discover the reason for this provision. A leading object of the enactment was to benefit the poor man who was unable to buy lands at government price and receive his title at once and without condition; and it undoubtedly occurred to congress that many persons who had been unfortunate, and were insolvent, would avail themselves of the act; and conceiving that the creditor, in such cases, had no equity to subject to the payment of his debt lands which had been given to the debtor by the bounty of the government, and to protect the debtor and encourage persons to settle upon the public domain under the act, the fourth section was adopted." Manifestly the provision under consideration was intended as a protection to the homestead settler, the patentee, and not to exempt the land acquired under the law from the payment of the debts of a subsequent owner, although incurred prior to the date of the patent. The decree is accordingly

AFFIRMED.